# BALDWIN *v.* NEW YORK

No. 188.   Argued December 9, 1969—Decided June 22, 1970

*William E. Hellerstein* argued the cause for appellant. With him on the brief were *Leon B. Polsky* and *Alice Daniel.*

*Michael R. Juviler* argued the cause for appellee. With him on the brief were *Frank S. Hogan, Lewis R. Friedman,* and *David Otis Fuller, Jr.*

*Louis J. Lefkowitz,* Attorney General, *pro se, Samuel A. Hirshowitz,* First Assistant Attorney General, and *Maria L. Marcus,* Assistant Attorney General, filed a brief for the Attorney General of New York as *amicus curiae* urging affirmance.

MR. JUSTICE WHITE announced the judgment of the Court and delivered an opinion in which MR. JUSTICE BRENNAN and MR. JUSTICE MARSHALL join.

Appellant was arrested and charged with "jostling"— a Class A misdemeanor in New York, punishable by a maximum term of imprisonment of one year.[1] He was brought to trial in the New York City Criminal Court. Section 40 of the New York City Criminal Court Act declares that all trials in that court shall be without a jury.[2] Appellant's pretrial motion for jury trial was accordingly denied. He was convicted and sentenced to imprisonment for the maximum term. The New York

---

[1] "Jostling" is one of the ways in which legislatures have attempted to deal with pickpocketing. See Denzer & McQuillan, Practice Commentary, N. Y. Penal Law, following § 165.25; Note, Pickpocketing: A Survey of the Crime and Its Control, 104 U. Pa. L. Rev. 408, 419 (1955). The New York law provides:

"A person is guilty of jostling when, in a public place, he intentionally and unnecessarily:

"1. Places his hand in the proximity of a person's pocket or handbag; or

"2. Jostles or crowds another person at a time when a third person's hand is in the proximity of such person's pocket or handbag." N. Y. Penal Law § 165.25.

Appellant was convicted on the testimony of the arresting officer. The officer stated that he had observed appellant, working in concert with another man, remove a loose package from an unidentified woman's pocketbook after the other man had made a "body contact" with her on a crowded escalator. He arrested both men, searched appellant, and found a single $10 bill. No other testimony or evidence was introduced on either side. The trial judge thought the police officer "a very forthright and credible witness" and found appellant guilty. He was subsequently sentenced to one year in the penitentiary. See App. 1–17, 21.

[2] "All trials in the court shall be without a jury. All trials in the court shall be held before a single judge; provided, however, that where the defendant has been charged with a misdemeanor . . . [he] shall be advised that he has the right to a trial in a part of the court held by a panel of three of the judges thereof . . . ." N. Y. C. Crim. Ct. Act § 40 (Supp. 1969).

Court of Appeals affirmed the conviction, rejecting appellant's argument that § 40 was unconstitutional insofar as it denied him an opportunity for jury trial.[3]   We noted probable jurisdiction.[4]   We reverse.

In *Duncan* v. *Louisiana,* 391 U. S. 145 (1968), we held that the Sixth Amendment, as applied to the States through the Fourteenth, requires that defendants accused of serious crimes be afforded the right to trial by jury. We also reaffirmed the long-established view that so-called "petty offenses" may be tried without a jury.[5] Thus the task before us in this case is the essential if not wholly satisfactory one, see *Duncan,* at 161, of determining the line between "petty" and "serious" for purposes of the Sixth Amendment right to jury trial.

Prior cases in this Court narrow our inquiry and furnish us with the standard to be used in resolving this issue.   In deciding whether an offense is "petty," we have sought objective criteria reflecting the seriousness with which society regards the offense, *District of Columbia* v. *Clawans,* 300 U. S. 617, 628 (1937), and we have found the most relevant such criteria in the severity of the maximum authorized penalty.   *Frank* v. *United States,* 395 U. S. 147, 148 (1969); *Duncan* v. *Louisiana, supra,* at 159–161; *District of Columbia* v. *Clawans, supra,* at 628.   Applying these guidelines, we have held

[3] 24 N. Y. 2d 207, 247 N. E. 2d 260 (1969).

[4] 395 U. S. 932 (1969).

[5] *Duncan* v. *Louisiana,* 391 U. S. 145, 159 (1968); see *Cheff* v. *Schnackenberg,* 384 U. S. 373 (1966); *District of Columbia* v. *Clawans,* 300 U. S. 617 (1937); *District of Columbia* v. *Colts,* 282 U. S. 63 (1930); *Schick* v. *United States,* 195 U. S. 65 (1904); *Natal* v. *Louisiana,* 139 U. S. 621 (1891); *Callan* v. *Wilson,* 127 U. S. 540 (1888); Frankfurter & Corcoran, Petty Federal Offenses and the Constitutional Guaranty of Trial by Jury, 39 Harv. L. Rev. 917 (1926).   But see Kaye, Petty Offenders Have No Peers!, 26 U. Chi. L. Rev. 245 (1959).

that a possible six-month penalty is short enough to permit classification of the offense as "petty," *Dyke* v. *Taylor Implement Co.,* 391 U. S. 216, 220 (1968); *Cheff* v. *Schnackenberg,* 384 U. S. 373 (1966), but that a two-year maximum is sufficiently "serious" to require an opportunity for jury trial, *Duncan* v. *Louisiana, supra.* The question in this case is whether the possibility of a one-year sentence is enough in itself to require the opportunity for a jury trial. We hold that it is. More specifically, we have concluded that no offense can be deemed "petty" for purposes of the right to trial by jury where imprisonment for more than six months is authorized.[6]

New York has urged us to draw the line between "petty" and "serious" to coincide with the line between misdemeanor and felony. As in most States, the maximum sentence of imprisonment for a misdemeanor in New York is one year, for a felony considerably longer.[7] It is also true that the collateral consequences attaching to a felony conviction are more severe than those attaching to a conviction for a misdemeanor.[8] And, like other

---

[6] Decisions of this Court have looked to both the nature of the offense itself, *District of Columbia* v. *Colts,* 282 U. S. 63 (1930), as well as the maximum potential sentence, *Duncan* v. *Louisiana,* 391 U. S. 145 (1968), in determining whether a particular offense was so serious as to require a jury trial. In this case, we decide only that a potential sentence in excess of six months' imprisonment is sufficiently severe by itself to take the offense out of the category of "petty." None of our decisions involving this issue have ever held such an offense "petty." See cases cited n. 5, *supra.*

[7] N. Y. Penal Law, §§ 10.00, 70.15 (1967).

[8] Both the convicted felon and the convicted misdemeanant may be prevented under New York law from engaging in a wide variety of occupations. In addition, the convicted felon is deprived of certain civil rights, including the right to vote and to hold public office. The relevant statutes are set out in Brief for Appellant C–1 to C–6; Brief for Appellee A8–A12.

States, New York distinguishes between misdemeanors and felonies in determining such things as whether confinement shall be in county or regional jails, rather than state prison,[9] and whether prosecution may proceed by information or complaint, rather than by grand jury indictment.[10]  But while these considerations reflect what may readily be admitted—that a felony conviction is more serious than a misdemeanor conviction—they in no way detract from appellant's contention that some misdemeanors are also "serious" offenses.  Indeed we long ago declared that the Sixth Amendment right to jury trial "is not to be construed as relating only to felonies, or offences punishable by confinement in the penitentiary.  It embraces as well some classes of misdemeanors, the punishment of which involves or may involve the deprivation of the liberty of the citizen." *Callan* v. *Wilson,* 127 U. S. 540, 549 (1888).[11]

A better guide "[i]n determining whether the length of the authorized prison term or the seriousness of other punishment is enough in itself to require a jury trial" is disclosed by "the existing laws and practices in the Nation." *Duncan* v. *Louisiana, supra,* at 161.  In the federal system, as we noted in *Duncan,* petty offenses

[9] See statutes cited n. 7, *supra;* N. Y. Penal Law § 70.20 (1967).

[10] N. Y. Const., Art. I, § 6; N. Y. Code Crim. Proc. §§ 22, 222 (1958); N. Y. C. Crim. Ct. Act §§ 31, 41 (1963); see, *e. g., People* v. *Bellinger,* 269 N. Y. 265, 199 N. E. 213 (1935); *People* v. *Van Dusen,* 56 Misc. 2d 107, 287 N. Y. S. 2d 741 (1967).

[11] Even New York distinguishes among misdemeanors in terms of the seriousness of the offense.  Following a recent revision of the penal law, Class A misdemeanors were made punishable by up to one year's imprisonment, Class B misdemeanors up to three months' imprisonment, and "violations" up to 15 days.  As Judge Burke noted in his dissenting opinion below, "an argument can be made with some force that the Legislature has identified petty offenses as those included in the 'violations' category and in the category of class B misdemeanors." 24 N. Y. 2d 207, 225, 247 N. E. 2d 260, 270 (1969).

have been defined as those punishable by no more than six months in prison and a $500 fine.[12]   And, with a few exceptions, crimes triable without a jury in the American States since the late 18th century were also generally punishable by no more than a six-month prison term.[13] Indeed, when *Duncan* was decided two Terms ago, we could discover only three instances in which a State denied jury trial for a crime punishable by imprisonment for longer than six months: the Louisiana scheme at issue in *Duncan*, a New Jersey statute punishing disorderly conduct, and the New York City statute at issue in this case.[14]   These three instances have since been reduced to one.   In response to the decision in *Duncan*, Louisiana has lowered the penalty for certain misdemeanors to six months, and has provided for a jury trial where the penalty still exceeds six months.[15] New Jersey has amended its disorderly persons statute by reducing the maximum penalty to six months' imprisonment and a $500 fine.[16]   Even New York State would have provided appellant with a six-man-jury trial for this offense if he had been tried outside the City of New York.[17]   In the entire Nation, New York City alone

[12] 18 U. S. C. § 1.

[13] Frankfurter & Corcoran, n. 5, *supra.*

[14] *Duncan* v. *Louisiana,* 391 U. S. 145, 161 n. 33 (1968).

[15] La. Crim. Proc. Code Ann., Art. 779 (Supp. 1969); see Comment, Jury Trial in Louisiana—Implications of Duncan, 29 La. L. Rev. 118, 127 (1968).

[16] N. J. Rev. Stat. § 2A:169-4 (Supp. 1969).

[17] Compare N. Y. C. Crim. Ct. Act § 40 (Supp. 1969), with N. Y. Uniform Dist. Ct. Act § 2011 (1963); N. Y. Uniform City Ct. Act § 2011 (Supp. 1969).   Because of our disposition of this case on appellant's jury-trial claim, we find it unnecessary to consider his argument that New York has violated the Equal Protection Clause by denying him a jury trial, while granting a six-man-jury trial to defendants charged with the identical offense elsewhere in the State. See *Salsburg* v. *Maryland,* 346 U. S. 545 (1954); *Missouri* v. *Lewis,* 101 U. S. 22 (1880).   See generally Horowitz & Neitring, Equal

denies an accused the right to interpose between himself and a possible prison term of over six months, the commonsense judgment of a jury of his peers.[18]

It is true that in a number of these States the jury provided consists of less than the 12-man, unanimous-verdict jury available in federal cases.[19] But the primary purpose of the jury is to prevent the possibility of oppression by the Government; the jury interposes between the accused and his accuser the judgment of laymen who are less tutored perhaps than a judge or panel of judges, but who at the same time are less likely to function or appear as but another arm of the Government that has proceeded against him.[20] Except for the criminal courts of New York City, every other court in the Nation proceeds under jury trial provisions that reflect this "fundamental decision about the exercise of official power," *Duncan* v. *Louisiana, supra,* at 156, when what is at stake is the deprivation of individual liberty for a period exceeding six months. This near-uniform judgment of the Nation furnishes us with the only objective criterion by which a line could ever be drawn— on the basis of the possible penalty alone—between

---

Protection Aspects of Inequalities in Public Education and Public Assistance Programs From Place to Place Within a State, 15 U. C. L. A. L. Rev. 787–804 (1968).

[18] The various state statutory provisions are set out in the briefs filed in this case. A survey is also included in American Bar Assn. Project on Standards for Criminal Justice, Advisory Committee on the Criminal Trial, Trial by Jury 20–23 (Approved Draft 1968) (recommending that the possibility of six months' imprisonment and a fine of $500, "should be the upper limit upon the definition of 'petty offenses'").

[19] In a related decision of this date we hold that trial by a six-man jury satisfies the Sixth Amendment requirement of jury trial. *Williams* v. *Florida, post,* p. 78.

[20] Thus a trial before a panel of three judges, which appellant might have requested in lieu of trial before a single judge, see n. 2, *supra,* can hardly serve as a substitute for a jury trial.

offenses that are and that are not regarded as "serious" for purposes of trial by jury.[21]

Of necessity, the task of drawing a line "requires attaching different consequences to events which, when they lie near the line, actually differ very little." *Duncan* v. *Louisiana, supra,* at 161. One who is threatened with the possibility of imprisonment for six months may find little difference between the potential consequences that face him, and the consequences that faced appellant here. Indeed, the prospect of imprisonment for however short a time will seldom be viewed by the accused as a trivial or "petty" matter and may well result in quite serious repercussions affecting his career and his reputation. Where the accused cannot possibly face more than six months' imprisonment, we have held that these disadvantages, onerous though they may be, may be outweighed by the benefits that result from speedy and inexpensive nonjury adjudications. We cannot, however, conclude that these administrative conveniences, in light of the practices that now exist in every one of the 50 States as well as in the federal courts, can sim-

---

[21] We find little relevance in the fact that Congress has defined misdemeanors punishable by imprisonment up to one year as "minor offenses" for purposes of vesting trial jurisdiction in the United States magistrates rather than commissioners, 18 U. S. C. § 3401 (f) (1964 ed., Supp. IV), or for purposes of authorizing eavesdropping under state court orders, 18 U. S. C. § 2516 (2) (1964 ed., Supp. IV), or for purposes of determining the eligibility for jury service of formerly convicted persons, 28 U. S. C. § 1865 (b) (5) (1964 ed., Supp. IV). Such statutes involve entirely different considerations from those involved in deciding when the important right to jury trial shall attach to a criminal proceeding. Nothing in any of the above Acts suggests that Congress meant to alter its longstanding judgment that "[n]otwithstanding any Act of Congress to the contrary . . . [a]ny misdemeanor, the penalty for which does not exceed imprisonment for a period of six months or a fine of not more than $500, or both, is a petty offense." 18 U. S. C. § 1.

ilarly justify denying an accused the important right to trial by jury where the possible penalty exceeds six months' imprisonment.[22]   The conviction is

*Reversed.*

Mr. Justice Blackmun took no part in the consideration or decision of this case.

[For dissenting opinion of Mr. Justice Harlan, see *post,* p. 117.]

[For dissenting opinion of Mr. Justice Stewart, see *post,* p. 143.]

Mr. Justice Black, with whom Mr. Justice Douglas joins, concurring in the judgment.

I agree that the appellant here was entitled to a trial by jury in a New York City court for an offense punishable by one year's imprisonment.   I also agree that his right to a trial by jury was governed by the Sixth Amendment to the United States Constitution made applicable to the States by the Fourteenth Amendment. I disagree, however, with the view that a defendant's right to a jury trial under the Sixth Amendment is determined by whether the offense charged is a "petty" or "serious" one.   The Constitution guarantees a right of trial by jury in two separate places but in neither does it hint of any difference between "petty" offenses and "serious" offenses.   Article III, § 2, cl. 3, provides that "[t]he Trial of all Crimes, except in Cases of Impeachment, shall be by Jury," and Amendment VI provides that "[i]n all criminal prosecutions, the accused shall

---

[22] Experience in other States, notably California where jury trials are available for all criminal offenses including traffic violations, Cal. Pen. Code § 689 (1956), suggests that the administrative burden is likely to be slight, with a very high waiver rate of jury trials.   See H. Kalven & H. Zeisel, The American Jury 18–19 and n. 12 (1966).

enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ." Thus the Constitution itself guarantees a jury trial "[i]n all criminal prosecutions" and for "all crimes." Many years ago this Court, without the necessity of an amendment pursuant to Article V, decided that "all crimes" did not mean "all crimes," but meant only "all serious crimes." [1] Today three members of the Court would judicially amend that judicial amendment and substitute the phrase "all crimes in which punishment for more than six months is authorized." This definition of "serious" would be enacted even though those members themselves recognize that imprisonment for less than six months may still have serious consequences. This decision is reached by weighing the advantages to the defendant against the administrative inconvenience to the State inherent in a jury trial and magically concluding that the scale tips at six months' imprisonment. Such constitutional adjudication, whether framed in terms of "fundamental fairness," "balancing," or "shocking the conscience," amounts in every case to little more than judicial mutilation of our written Constitution. Those who wrote and adopted our Constitution and Bill of Rights engaged in all the balancing necessary. They decided that the value of a jury trial far outweighed its costs for "all crimes" and "[i]n all criminal prosecutions." Until that language is changed by the constitutionally prescribed method of amendment, I cannot agree that this Court can reassess the balance and substitute its own judgment for that embodied in the Constitution. Since there can be no doubt in this case that Baldwin was charged with and convicted of a "crime" in any relevant sense

---

[1] See *Callan* v. *Wilson*, 127 U. S. 540 (1888); *District of Columbia* v. *Colts*, 282 U. S. 63 (1930); *District of Columbia* v. *Clawans*, 300 U. S. 617 (1937); cf. *Schick* v. *United States*, 195 U. S. 65 (1904).

of that word—I agree that his conviction must be reversed because he was convicted without the benefit of a jury trial.[2]

MR. CHIEF JUSTICE BURGER, dissenting.

I dissent from today's holding that something in the Sixth and Fourteenth Amendments commands New York City to provide trial by jury for an offense punishable by a confinement of more than six months but less than one year. MR. JUSTICE BLACK has noted correctly that the Constitution guarantees a jury trial "[i]n all criminal prosecutions" (Amendment VI) and for "all Crimes" (Art., III, § 2, cl. 3), but these provisions were not written as a command to the States; they were written at a time when the Federal Government exercised only a limited authority to provide for federal offenses "very grave and few in number." [1] The limited number of serious acts that were made criminal offenses were against federal authority, and were proscribed in a period when administration of the criminal law was regarded as largely the province of the States. The Founding

---

[2] My view does not require a conclusion that every act which may lead to "minuscule" sanctions by the Government is a "crime" which can only be punished after a jury trial. See *Frank* v. *United States,* 395 U. S. 147, 159–160 (1969) (dissenting opinion). There may be instances in which certain conduct is punished by fines or other sanctions in circumstances that would not make that conduct criminal. Not all official sanctions are imposed in criminal proceedings, but when, as in this case, the sanction bears all the indicia of a criminal punishment, a jury trial cannot be denied by labeling the punishment "petty."

[1] See Frankfurter & Corcoran, Petty Federal Offenses and the Constitutional Guaranty of Trial by Jury, 39 Harv. L. Rev. 917, 975–976 (1926), where the authors observe: "Until very recently the occasion for considering the dispensability of trial by jury in the enforcement of the criminal law has hardly presented itself to Congress, except as to the Territories and the District of Columbia, because, on the whole, federal offenses were at once very grave and few in number." (Footnote omitted.)

Fathers therefore cast the constitutional provisions we deal with here as limitations on federal power, not the power of States. State administration of criminal justice included a wide range of petty offenses, and as to many of the minor cases, the States often did not require trial by jury.[2] This state of affairs had not changed appreciably when the Fourteenth Amendment was approved by Congress in 1866 and was ratified by the States in 1868. In these circumstances, the jury trial guarantees of the Constitution properly have been read as extending only to "serious" crimes. I find, however, nothing in the "serious" crime coverage of the Sixth or Fourteenth Amendment that would require this Court to invalidate the particular New York City trial scheme at issue here.

I find it somewhat disconcerting that with the constant urging to adjust ourselves to being a "pluralistic society"—and I accept this in its broad sense—we find constant pressure to conform to some uniform pattern on the theory that the Constitution commands it. I see no reason why an infinitely complex entity such as New York City should be barred from deciding that misdemeanants can be punished with up to 365 days' confinement without a jury trial while in less urban areas another body politic would fix a six-month maximum for offenses tried without a jury. That the "near-uniform judgment of the Nation" is otherwise than the judgment in some of its parts affords no basis for me to read into the Constitution something not found there. What may be a serious offense in one setting—e. g., stealing a horse in Cody, Wyoming, where a horse may be an indispensable part of living—may be considered less serious in another area, and the procedures for finding guilt and fixing punishment in the two locales may rationally differ from each other.

---

[2] See *id.*, at 934–965; *District of Columbia* v. *Clawans*, 300 U. S. 617, 626 (1937).