LANDRY, Judge.
Pursuant to application by Dr. Eugene Dabezies (Relator), an alternative writ issued herein ordering the Honorable Baron B. Bourg, Judge, Seventeenth Judicial District Court, Terrebonne Parish (Respondent), to set aside or show cause by brief before this court, why a judgment rendered by Respondent holding Relator in direct contempt of court should not be set aside and vacated. The judgment sentenced Relator to serve a term of six hours in the parish jail and pay a fine of $150.00 and costs, and in default of payment to serve an additional ten days in jail, for failure to appear as a witness in obedience to a duly served subpoena. We recall the alternative writ and affirm the decision of the lower court.
The issues presented are: (1) Was Relator guilty of a direct contempt of court?; (2) Was Relator entitled to a jury trial?; (3) Was Relator entitled to be tried by a judge other than Respondent?, and (4) Did the trial court abuse its discretion in sentencing Relator to jail upon a first conviction for contempt?
There is little, if any dispute concerning the facts. These consolidated cases are tort actions by a host driver and his guest passenger to recover damages for personal injuries sustained in an automobile accident. Trial was set for November 21 and 22, 1972, at 9:00 A.M. A plaintiff, Mrs. Lucy Michel, was attended by Relator, a surgeon, whose office is situated in New Orleans. By letter dated October 3, 1972, Ernest Kelly, attorney for Mrs. Michel, advised Relator that trial had been set for the above dates; that it was almost certain the matter would be tried, and that Relator’s testimony would be needed. Kelly *624 further informed Relator the matter would be confirmed later, and that a subpoena would issue to Relator. Additionally, Kelly inquired whether it would be necessary for Relator to re-examine Mrs. Michel prior to trial. In response, Relator returned Kelly’s letter with a notation thereon stating that Relator’s fee for appearing in court in Houma, Louisiana, would be $500.00, and added that Relator had not dictated a report. Relator also inquired whether Kelly desired a report and requested confirmation by letter.
On October 27, 1972, Kelly requested the clerk of the trial court to issue subpoenas for several witnesses, including Relator. Said request was accompanied by a deposit of the requisite amount of witnesses’ fees. The subpoena commanded Relator to appear at 9:00 A.M., November 21, and 22, 1972. Personal service of the subpoena was made on Relator on November 6, 1972.
By letter dated November 8, 1972, Relator acknowledged receipt of the subpoena and advised Kelly that the best day for Relator to appear was November 21st. Relator requested that Kelly advise as soon as possible whether this arrangement was satisfactory as Relator would have to cancel surgery scheduled for that day. Relator also requested that Mrs. Michel report for re-examination on November 14, 1972, if Kelly desired a report on her condition.
Relator did not appear on November 21, 1972, as ordered. On instruction from Respondent, a Deputy Sheriff called Relator’s office in New Orleans, and spoke with Relator’s nurse who informed the Deputy that Relator was then in surgery. The Deputy informed the nurse that Relator must appear to testify that day if Relator could be in Houma by 3:30 P.M.; if not, Relator was required to be in Houma the following morning at 9:00 A.M. Later that same day, Relator contacted Kelly’s secretary by telephone, and advised the secretary to have Kelly wire confirmation of Relator’s $500.00 witness fee. Relator received no response, and did not appear in court on November 21st.
On the morning of November 22, Relator did not respond when his name was called. A Deputy Sheriff called Relator’s office and was informed Relator was in surgery. At approximately 9:30 A.M., November 22, Earl P. Dockery, Jr., Deputy Clerk of the trial court, received a call from a Mrs. Cooper (presumably Relator’s nurse) asking if it were possible that Relator could be deposed because Relator was then in surgery. Mr. Dockery relayed this request to Respondent who instructed the Deputy Clerk to inform Mrs. Cooper that Relator was required to appear in court that day. Despite Mr. Dockery conveying Respondent’s instruction, Relator failed to appear at the trial which concluded' at approximately 4:30 P.M. that same afternoon.
Upon conclusion of the trial, Respondent issued an attachment for Relator’s appearance on December 1, 1972, to show cause why Relator should not be held in contempt. Additionally, Respondent took the testimony of the Attorneys and the Deputy Clerk of Court concerning the circumstances attending Relator’s failure to appear.
Kelly’s testimony is to the effect he never advised Relator it was unnecessary that Relator respond to the summons. Kelly also testified that the only communication he received from Relator was the return of Kelly’s letter with Relator’s notation thereon that Relator’s fee for testifying would be $500.00. Other attorneys of record testified simply they had no contact with Relator concerning Relator’s appearance. Mr. Dockery testified merely that he received a call from Mrs. Cooper as above noted.
On December 1, 1972, Relator appeared as ordered. Upon the -trial court offering Relator opportunity to make a statement, Relator, through counsel, narrated Relator’s reputation as a distinguished surgeon and a law abiding citizen who always cooperated with the courts. Relator further noted his receipt of approximately 50 sub *625 poenas annually, eighty per cent of which are either cancelled or result in his testimony being given by deposition. On this basis, it is contended Relator reasonably assumed his testimony could be given by deposition in this instance. Relator also introduced and alluded to the two letters sent Kelly, and the failure of Mrs. Michel to keep her November 14th appointment. Relator also pointed out that surgery is necessarily scheduled days or weeks in advance, and for this reason, he requested that Kelly give him prior notice of the date on which Relator would be subpoenaed. Next Relator recites that on the morning of the trial, he had not heard from Kelly, and had no knowledge other than that he had been served. Relator then states that on the morning of November 21st, when contacted, he was in surgery and could not report for trial, as was also the case when he was contacted by the Deputy Clerk the following morning. On the afternoon of November 22, he made several calls to Respondent’s office, but was informed that Respondent was in court. His calls were not returned. Relator then asserts that at this time he was prepared to cancel his scheduled surgery, if necessary, in order to appear. In conclusion, Relator stated that had he been extended the courtesy of notification as to the exact time to appear, rather than being summoned to appear on two different days, he would have been present.
We consider first whether Relator’s action constituted a direct as distinguished from a constructive contempt.
Direct contempt is defined in LSA-C.C. P. art. 222, which in pertinent part reads as follows:
“A direct contempt of court is one committed in the immediate view and presence of the court and of which it has personal knowledge, or a contumacious failure to comply with a subpoena or summons, proof of service of which appears of record.
Any of the following acts constitutes a direct contempt of court:
‡ i|i if: %
(5) Contumacious failure to comply with a subpoena, proof of service of which appears of record * * * *.”
We observe the comment in footnote (b) under the foregoing Article, which states in part that “ . . . the whole theory of the direct contempt is that the judge does not need the introduction of evidence to reach his finding.” The footnote also recites that contumacious refusal of a witness or juror to honor a subpoena clearly falls within the ambit of those instances where the judge needs no proof, inasmuch as service of the subpoena appears of record.
Relator maintains his failure was not contumacious in that it was not stubborn or willful. In so contending, he relies first upon his counsel’s narration appearing of record. Next Relator contends a direct contempt is one instantly punishable for having been committed in the presence of the court, and which does not require introduction of evidence. Here, Relator urges, evidence was necessary to establish the alleged contempt.
We find no merit in Relator’s position considering Article 222, above, expressly defines direct contempt as a contumacious failure to appear, where proof of service of subpoena appears of record, which is the precise case here. The question is, therefore, was Relator’s refusal contumacious ?
We reject Relator’s contention that his failure to appear is excusable because he was misled into believing his presence was unnecessary, and that upon his realizing such was not the case, he did all within his power to comply, but could not do so because of his peculiar position which prevented his compliance on such short notice. The subpoena commanded Relator’s appearance. It behooved Relator to be certain whether counsel would take his testi *626 mony by deposition or require Relator’s personal presence. Relator had two weeks between service of the subpoena and the date of his appearance in which to make sure of counsel’s intention in this regard. It is certain that counsel never agreed to take Relator’s deposition. Granted that counsel may have been somewhat lacking in professional courtesy toward Relator, there could be no doubt concerning counsel’s intention when Relator received Respondent’s telephone instructions to appear. Under the circumstances, we find the trial court properly held Relator in direct contempt of court.
Considering Respondent’s claim of entitlement to a jury trial, we initially note that LSA-C.C.P. art. 223, which establishes the procedure for punishing one convicted of a direct contempt, does not provide for a jury trial. We have not been referred to any other statutory provision of our own which requires a jury trial in instances of this nature. Moreover, our own jurisprudence holds that no jury trial is required in any instance unless the penalty which may be imposed exceeds imprisonment for more than six months or a fine of more than $500.00. State v. Seals, 255 La. 1005, 233 So.2d 914. Pursuant to LSA-R.S. 13:4611 (A) (4), the maximum penalty in cases of this sort is a fine of not more than $250.00 or imprisonment for not more than thirty days. The fine and imprisonment actually imposed upon Relator was considerably less than the maximum provided by the applicable statute. We hold therefore that under our laws and jurisprudence Relator was not entitled to a jury trial.
In urging the right to jury trial, Relator relies principally upon Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522, which held that the constitutional right to jury trial extends to serious criminal contempts. The court also held that denial of jury trial to defendant, who was sentenced to imprisonment for contempt for a period of 24 months, violated the constitutional right to jury trial provided by U.S.Const. Article 3, Section 2, and of the Sixth Amendment of the Federal Constitution which is binding upon the states by virtue of the Due Process Clause of the Fourteenth Amendment. In Bloom v. Illinois, above, the court reasoned that criminal contempt is similar to other criminal offenses insofar as concerns the right to jury trial. In so doing, the court further ruled that similar to petty criminal offenses, a jury trial is not required in a criminal contempt proceeding where the offense is petty. The court further reasoned that whether the offense is serious or petty is determined by the maximum sentence which may be imposed therefor. In Bloom, above, the court noted that the Illinois statute did not fix a maximum penalty for the violation charged, consequently, the court judged the seriousness of the offense by the penalty imposed. On this basis, the court found that imposition of a sentence of imprisonment for 24 months rendered the offense serious thereby entitling the offender to a jury trial.
In the more recent case of Baldwin v. New York, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437, the United States Supreme Court appears to put at rest the issue of what constitutes petty as distinguished from serious offense. In Baldwin, above, the court expressly held that where an accused cannot possibly face a penalty of more than six months imprisonment, the offense will be deemed petty, and the offender will not be held entitled to a jury trial as of right on constitutional grounds. See also, Louisiana State Board of Medical Examiners v. Bates, 258 La. 1049, 249 So.2d 127.
As previously noted, the maximum penalty to which Relator could have been sentenced was a fine of $250.00, and imprisonment for not more than thirty days. We find that the imposable penalty characterizes a direct contempt as an offense which does not require a jury trial. Baldwin v. New York, above, This holding accords with our own Supreme Court’s decision in State v. Seals, 255 La. 1005, 233 So.2d 914. *627 We hold, therefore, that Relator is not entitled to trial by jury in this instance.
Relator’s contention that he is entitled to be tried by a judge other than Respondent is predicated upon Mayberry v. Pennsylvania, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532. In Mayberry, the court held that the Fourteenth Amendment to the Federal Constitution requires that a defendant in a criminal contempt proceeding be tried by a judge other than the one reviled by the contemnor. Our review of Mayberry discloses that it is limited to instances of the nature therein involved, namely, cases where the contempt charged is a personal attack upon or criticism of the judge of such nature that disqualifying bias may be presumed. The present case does not fall within that category. Here the contempt charged casts no aspersions upon the trial judge, and the circumstances do not warrant disqualification of the trial judge for probable or potential bias.
 As regards the alleged excessiveness of sentence, our jurisprudence holds that the severity of a sentence imposed is within the sound discretion of the trial court, and is a matter into which appellate courts will not inquire so long as the sentence imposed is within the limits fixed by law. In reviewing contempt proceedings under its supervisory powers, an appellate court will examine only those matters relating to the jurisdiction or power of the court and the regularity of the proceedings. Gautreau v. Gautreau, 225 La. 254, 72 So.2d 497. Since the sentence imposed herein was within the statutory limits, we decline a review thereof.
It is ordered, adjudged and decreed that the alternative writs issued herein be and the same are hereby annulled and set aside and judgment rendered herein affirming the judgment of the trial court at Relator’s cost.
Writs recalled; judgment of the trial court affirmed.