The STATE of Texas for the Best Interest and Protection of F.H.

No. 12–06–00297–CV.

Court of Appeals of Texas, Tyler.

Jan. 31, 2007.

Dana Norris Young, for appellant.

Rachel L. Patton, Gordon K. Lemaire, for appellee.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and HOYLE, J.

## OPINION

SAM GRIFFITH, Justice.

F.H. appeals from an order authorizing the administration of psychoactive medication-forensic. In her sole issue, F.H. argues that the trial court erred in granting the order based upon the United States Supreme Court's opinion in *Sell v. United States*, 539 U.S. 166, 123 S.Ct. 2174, 156 L.Ed.2d 197 (2003). We reverse and render.

### BACKGROUND

On August 10, 2006, an application for an order to administer psychoactive medication-forensic was filed by Dr. Satyajeet Lahiri. In the application, Lahiri stated that F.H. was subject to an order dated June 16 for court ordered inpatient mental health services under Chapter 46B of the Texas Code of Criminal Procedure because she had been found incompetent to stand trial. The clerk's record showed that F.H. was charged with criminal trespass of a building, a Class B misdemeanor. Lahiri stated that F.H. had been diagnosed with bipolar disorder, manic with psychosis. Lahiri wanted the trial court to compel F.H. to take five psychoactive medications: an antidepressant, an anxoilytic/sedative/hypnotic, a mood stabilizer, and two antipsychotics. Lahiri stated that F.H. refused to take the medications voluntarily and that he believed F.H. lacked the capacity to make a decision regarding administration of psychoactive medications because she was acutely psychotic with aggressive behavior.

Lahiri concluded that the proposed medications were the proper course of treatment for F.H. and that if she were treated with the medications, her prognosis would be good. However, Lahiri believed that if F.H. was not administered the medications, the consequences would be poor. Lahiri considered other medical alternatives to psychoactive medication, but determined that those alternatives would not be as effective. He also considered less intrusive treatments likely to secure F.H.'s agreement to take the psychoactive medications. Finally, Lahiri believed that the benefits of the psychoactive medications outweighed the risks in relation to present medical treatment and F.H.'s best interest.

On August 15, the trial court held a hearing on the application. Lahiri testified that he was F.H.'s treating physician and that F.H. was currently under court ordered mental health services under Chapter 46B because she had been found incompetent to stand trial. Lahiri stated that F.H. refused to accept medications voluntarily and that he believed she lacked the capacity to make a decision regarding the administration of psychoactive medications. Lahiri diagnosed F.H. with bipolar disorder, manic, with psychosis. He testified that all the medications were in the proper course of treatment and that treatment with these medications was in F.H.'s best interest. Lahiri stated that F.H. would likely benefit from the use of these medications, that the benefits outweighed the risks, and that F.H.'s hospital stay would likely be shortened. Moreover, Lahiri testified that there were no less intrusive means of achieving the same or similar results.

On cross examination, Lahiri admitted that the proposed medications had side effects, including mild sedation, suicidal ideations, stiffness, shaking, drooling, tardive dyskinesia,[1] gait disturbance, nausea,

---

1. Tardive dyskinesia is a chronic disorder of the nervous system characterized by involuntary jerky movements of the face, tongue, jaws, trunk, and limbs, usually developing as a late side effect of prolonged treatment with antipsychotic drugs. *See* THE AMERICAN HERI-

and stomach irritability. According to La-hiri, most of these side effects would not impair consciousness or alertness. Before closing, F.H. requested that the trial court dismiss the application based upon *Sell.* However, the trial court granted the application. After the court's ruling, F.H. asked how long her stay would be. The trial court responded that F.H. would stay at the hospital until she was competent to stand trial.

In an order signed on August 15, 2006, after considering all the evidence, including the application and the expert testimony, the trial court found that the allegations in the application were true and correct and supported by clear and convincing evidence. The trial court found that F.H. lacked the capacity to make a decision regarding administration of medications and that treatment with the proposed medication was in F.H.'s best interest. The trial court authorized the Department to administer F.H. psychoactive medications, including antidepressants, antipsychotics, mood stabilizers, and anxiolytics/sedatives/hypnotics. This appeal followed.

### INVOLUNTARY ADMINISTRATION OF PSYCHOACTIVE MEDICATIONS

In her sole issue, F.H. argues that the trial court erred in granting the order authorizing administration of psychoactive medication-forensic. More specifically, F.H. contends that the State does not have an important governmental interest in medicating her to render her competent to stand trial because she is not accused of committing a serious crime. The State disagrees.

### Applicable Law

■ An individual has a constitutionally protected liberty interest in avoiding the involuntary administration of antipsychotic drugs. *Sell,* 539 U.S. at 178, 123 S.Ct. at 2183; *United States v. Leveck–Amirmokri,* No. EP–04–CR–0961–DB, 2005 WL 1009791, at *3 (W.D.Tex. Mar.10, 2005). The United States Constitution permits the government to involuntarily administer antipsychotic drugs to a mentally ill defendant facing serious criminal charges in order to render that defendant "competent to stand trial, but only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests." *Sell,* 539 U.S. at 179, 123 S.Ct. at 2184. Before antipsychotic drugs can be involuntarily administered when applying the above standard, a court must (1) find that important governmental interests are at stake, (2) conclude that involuntary medication will significantly further those concomitant state interests, (3) conclude that involuntary medication is necessary to further those state interests, and (4) conclude that administration of the drugs is medically appropriate. *Id.,* 539 U.S. at 180–81, 123 S.Ct. at 2184–85. A court need not consider whether to allow forced medication for purposes of rendering the defendant competent to stand trial if forced medication is warranted for a different purpose, such as the defendant's dangerousness or where refusal to take drugs puts the defendant's health at risk. *Id.,* 539 U.S. at 181–82, 123 S.Ct. at 2185.

### Analysis

■ As an initial matter, we note that there is no evidence that F.H. was dangerous to herself or others. The trial court found that F.H. lacked the capacity to make a decision regarding administration of medications, not that she was a danger

TAGE ® *STEDMAN'S* MEDICAL DICTIONARY 817 (1995).

to herself or others. The trial court also found that treatment with the proposed medication was in F.H.'s best interest, but there was no testimony or finding that her health was at risk if she did not take the proposed medications. Therefore, under *Sell*, we must determine whether the involuntary administration of psychoactive drugs to F.H. in order to render her competent to stand trial was constitutionally permissible. *See id.*, 539 U.S. at 179, 123 S.Ct. at 2184.

▮ Under the first component of the *Sell* standard, we must determine if there were important governmental interests at stake that necessitated the involuntary administration of these drugs to F.H. *See id.*, 539 U.S. at 180, 123 S.Ct. at 2184. The government's interest in bringing to trial an individual accused of a serious crime is important, whether the offense is a serious crime against persons or against property. *See id.*, 539 U.S. at 180, 123 S.Ct. at 2184. Thus, the relevant question is what constitutes a "serious crime." *See United States v. Barajas–Torres*, No. CRIM.EP–03–CR–2011KC, 2004 WL 1598914, at *2 (W.D.Tex. July 1, 2004). When addressing other constitutional issues, the United States Supreme Court and the Texas Supreme Court have defined a "serious offense" as one for which a defendant may be sentenced to imprisonment for more than six months. *See Baldwin v. New York*, 399 U.S. 66, 69, 90 S.Ct. 1886, 1888, 26 L.Ed.2d 437 (1970)(determining whether defendant had a right to a jury trial); *Ex parte Werblud*, 536 S.W.2d 542, 547 (Tex.1976)(determining whether relator had a right to a jury trial in a contempt hearing). Here, F.H. was charged with criminal trespass of a building, a Class B misdemeanor.[2] If convicted, F.H. may be punished by confinement in jail for a term not to exceed 180 days, or six months.[3]

Because F.H.'s potential punishment was not more than six months of imprisonment, the crime F.H. is charged with is not a "serious crime." *See Baldwin*, 399 U.S. at 69, 90 S.Ct. at 1888; *Ex parte Werblud*, 536 S.W.2d at 547. Thus, we conclude that no important governmental interests were at stake that necessitated the involuntary administration of psychoactive drugs to F.H. in order to render her competent to stand trial. *See Sell*, 539 U.S. at 179–80, 123 S.Ct. at 2184. Because the State failed to satisfy the first component of the *Sell* standard, we need not consider the remaining three components. F.H.'s sole issue is sustained.

### DISPOSITION

We *reverse* the trial court's order authorizing the administration of psychoactive medication-forensic. We *render* judgment denying the State's application for an order to administer psychoactive medication-forensic.

2. *See* TEX. PEN.CODE ANN. § 30.05(a), (d) (Vernon Supp.2006).

3. *See* TEX. PEN.CODE ANN. § 12.22 (Vernon 2003).