NO.
12-06-00304-CV

 

IN THE COURT OF APPEALS

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

 

 

THE STATE OF TEXAS     §                      APPEAL FROM THE 

 

FOR THE BEST INTEREST          §                      COUNTY COURT AT LAW OF

 

AND PROTECTION OF
D.B.         §                      CHEROKEE COUNTY, TEXAS

 

 



OPINION

            D.B. appeals
from an order authorizing the administration of psychoactive
medication-forensic.  In his sole issue,
D.B. argues that the trial court erred in granting the order based upon the
United States Supreme Court’s opinion in Sell v. United States,
539 U.S. 166, 123 S. Ct. 2174, 156 L. Ed. 2d 197 (2003).  We reverse and render.

 

Background

            On
August 7, 2006, an application for an order to administer psychoactive
medication-forensic was filed by Dr. C. B. Cuellar.  In the application, Cuellar stated that D.B.
was subject to an order dated August 4 for court ordered inpatient mental
health services under Chapter 46B of the Texas Code of Criminal Procedure
because he had been found incompetent to stand trial.  The clerk’s record showed that D.B. was
charged with resisting arrest, a Class A misdemeanor.  Cuellar stated that D.B. had been diagnosed
with schizophrenia, paranoid, continuous. 
Cuellar wanted the trial court to compel D.B. to take five psychoactive
medications: an antidepressant, an anxoilytic/sedative/hypnotic, a mood
stabilizer, and two antipsychotics. 
Cuellar stated that D.B. refused to take the medications voluntarily and
that he believed D.B. lacked the capacity to make a decision regarding
administration of psychoactive medications because he claimed not to remember
anything and denied that he was mentally ill.

 








            Cuellar
determined that the proposed medications were the proper course of treatment
for D.B. and that if he were treated with the medications, his prognosis would
be better and he could improve.  However,
Cuellar believed that if D.B. was not administered the medications, the
consequences would be deterioration. 
Cuellar considered other medical alternatives to psychoactive
medication, but determined that those alternatives would not be as
effective.  He also considered less
intrusive treatments likely to secure D.B.’s agreement to take the psychoactive
medications.  Finally, Cuellar believed
that the benefits of the psychoactive medications outweighed the risks in
relation to present medical treatment and D.B.’s best interest.

            On
August 15, the trial court held a hearing on the application.  Dr. Jon Guidry testified that he was D.B.’s treating
physician and that D.B. was currently under court ordered mental health
services under Chapter 46B because he had been found incompetent to stand
trial.  Guidry stated that D.B. verbally
refused to accept medications and that he believed D.B. lacked the capacity to
make a decision regarding the administration of psychoactive medications.  Although Guidry did not complete the
application, he reviewed it and agreed with Cuellar’s diagnosis of
schizophrenia, paranoid type, continuous. 
He reviewed the medications listed in the application and testified
that  these medications were in the
proper course of treatment and that treatment with these medications was in
D.B.’s best interest.  Guidry stated that
D.B. would likely benefit from the use of these medications, that the benefits
outweighed the risks, and that D.B.’s hospital stay would be shortened.  Moreover, Guidry testified that there were no
less intrusive means of achieving the same or similar results.

            On
cross examination, Guidry stated that he spoke to D.B. about using medications
and that D.B. understood the nature of that conversation.  Guidry testified that D.B. stated there was
nothing wrong with him and he did not need medications.  Although Guidry did not prepare the
application, he stated that he would use the same classes and types of
medications to treat D.B.  He testified
that he would start medicating D.B. with antipsychotics and admitted that the
proposed medications had side effects, including stiffness, restlessness, and
sedation.  Guidry believed that with the
use of medications, D.B.’s stay at the hospital would be between four to eight
weeks.  Before closing, D.B. moved for
directed verdict based upon Sell v. United States, 539 U.S. 166,
123 S. Ct. 2174, 156 L. Ed. 2d 197 (2003).  The trial court denied D.B.’s motion.  The trial court admitted two exhibits, a
misdemeanor information and judgment of commitment regarding D.B. Finally, the
trial court granted the application, noting that the side effects of the
proposed medications would not necessarily impede D.B.’s ability to function in
trial proceedings, but would, in fact, improve his mental health and restore
his ability to participate in a trial.

            On
August 15, 2006, after considering all the evidence, including the application and
the expert testimony, the trial court found that the allegations in the
application were true and correct and supported by clear and convincing
evidence.  The trial court found that
D.B. lacked the capacity to make a decision regarding administration of
medications and that treatment with the proposed medication was in D.B.’s best
interest.  The trial court authorized the
Department to administer D.B. psychoactive medications, including
antidepressants, antipsychotics, mood stabilizers, and anxiolytics/sedatives/hypnotics.
This appeal followed.

 

Involuntary
Administration of Psychoactive Medications

            In
his sole issue, D.B. argues that the trial court erred in granting the order
authorizing administration of psychoactive medication-forensic.  More specifically, D.B. contends that the
State has no important governmental interests in medicating him, that
involuntary medication will not significantly further any important
governmental interests, that involuntary medication is not necessary to further
any such interests, and that administration of the drugs is not medically
appropriate and in D.B.’s best medical interest.  The State disagrees.

Applicable Law








            An
individual has a constitutionally protected liberty interest in avoiding the
involuntary administration of antipsychotic drugs.  Sell, 539 U.S. at 178, 123 S.
Ct. at 2183; United States v. Leveck-Amirmokri, No.
EP-04-CR-0961-DB, 2005 WL 1009791, at *3 (W.D. Tex. Mar. 10, 2005). The United
States Constitution permits the government to involuntarily administer
antipsychotic drugs to a mentally ill defendant facing serious criminal charges
in order to render that defendant “competent to stand trial, but only if the
treatment is medically appropriate, is substantially unlikely to have side effects
that may undermine the fairness of the trial, and, taking account of less
intrusive alternatives, is necessary significantly to further important
governmental trial-related interests.”  Sell,
539 U.S. at 179, 123 S. Ct. at 2184.  In
applying the above standard, a court must (1) find that important governmental
interests are at stake, (2) conclude that involuntary medication will
significantly further those concomitant state interests, (3) conclude that
involuntary medication is necessary to further those state interests, and (4)
conclude that administration of the drugs is medically appropriate.  Id., 539 U.S. at 180-81, 123 S.
Ct. at 2184-85.  A court need not
consider whether to allow forced medication for purposes of rendering the
defendant competent to stand trial if forced medication is warranted for a
different purpose, such as the defendant’s dangerousness or where refusal to
take drugs puts the defendant’s health at risk. 
Id., 539 U.S. at 181-82, 123 S. Ct. at 2185. 

Analysis

            As
an initial matter, we note that there is no evidence that D.B. was dangerous to
himself or others.  The trial court found
that D.B. lacked the capacity to make a decision regarding administration of
medications, not that he was a danger to himself or others.  The trial court also found that treatment
with the proposed medications was in D.B.’s best interest, but there was no
testimony or finding that his health was at risk if he did not take the
proposed medications. Therefore, under Sell, we must determine
whether the involuntary administration of psychoactive drugs to D.B. in order
to render him competent to stand trial was constitutionally permissible.  See id., 539 U.S. at
179, 123 S. Ct. at 2184. 








            Under
the first component of the Sell standard, we must determine if
there are important governmental interests at stake that necessitate the
involuntary administration of these drugs to D.B. See id.,
539 U.S. at 180, 123 S. Ct. at 2184.  The
government’s interest in bringing to trial an individual accused of a serious
crime is important, whether the offense is a serious crime against persons or
property.  See id.,
539 U.S. at 180, 123 S. Ct. at 2184. 
Thus, the relevant question is what constitutes a “serious crime.”  See United States v. Barajas-Torres,
No. CRIM.EP-03-CR-2011KC, 2004 WL 1598914, at *2  (W.D. Tex. July 1, 2004).  When addressing other constitutional issues,
the United States Supreme Court and the Texas Supreme Court have defined a “serious
offense” as one for which a defendant may be sentenced to imprisonment for more
than six months.  See Baldwin v.
New York, 399 U.S. 66, 69, 90 S. Ct. 1886, 1888, 26 L. Ed. 2d 437
(1970) (determining whether defendant had a right to a jury trial); Ex
parte Werblud, 536 S.W.2d 542, 547 (Tex. 1976) (determining whether
relator had a right to a jury trial in a contempt hearing). Here, D.B. was
charged with resisting arrest, a Class A misdemeanor.[1]  If convicted, D.B. may be punished by confinement
in jail for a term not to exceed one year.[2]  Because D.B.’s potential punishment is more
than six months of imprisonment, the crime D.B. is charged with is a “serious
crime.”  See Baldwin, 399
U.S. at 69, 90 S. Ct. at 1888; Ex parte Werblud, 536 S.W.2d at
547. Thus, we conclude that important governmental interests are at stake in
involuntarily administering psychoactive drugs to D.B. in order to render him
competent to stand trial.  See Sell,
539 U.S. at 180, 123 S. Ct. at 2184. 

            In
addition to finding that important governmental interests are at stake, we must
determine whether involuntary medication will significantly further those
interests.  Sell, 539 U.S.
at 181, 123 S. Ct. at 2184; Leveck-Amirmokri, 2005 WL 1009791, at
*4.  Specifically, we must find that
administration of these drugs is substantially likely to render D.B. competent
to stand trial and that they are substantially unlikely to have side effects that
will interfere significantly with D.B.’s ability to assist counsel in
conducting a trial defense, thereby rendering the trial unfair.  Sell, 539 U.S. at 181, 123 S.
Ct. at 2184-85.  Here, Cuellar stated
that if D.B. was treated with psychoative medications, his prognosis was “better”
and that he could improve.  Guidry stated
that D.B. would likely benefit if he was treated with the proposed
medications.  However, there was no
evidence or testimony that administration of these medications was
substantially likely to render D.B. competent to stand trial. See  id., 539 U.S. at 181, 123 S. Ct.
at 2184.  Thus, we conclude that
involuntarily administering psychoactive drugs to D.B. would not significantly
further important governmental interests. 
See id., 539 U.S. at 181, 123 S. Ct. at 2184.  Because the State failed to satisfy the
second component of the Sell standard, we need not consider the
remaining two components.  Accordingly,
D.B.’s sole issue is sustained.

 

Disposition








            We
reverse the trial court’s order authorizing the administration of
psychoactive medication-forensic.  We render
judgment denying the State’s application for an order to administer
psychoactive medication-forensic.

 

                                                                                                    BRIAN HOYLE   

                                                                                                               Justice

Opinion delivered January 31, 2007.

Panel consisted of Worthen, C.J., Griffith, J., and
Hoyle, J.

 

 

(PUBLISH)











[1] See
Tex. Pen. Code Ann. § 38.03(a), (c) (Vernon 2003). 





[2] See
Tex. Pen. Code Ann. § 12.21 (Vernon 2003).