# NO. 12-17-00332-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *THE STATE OF TEXAS FOR* | *§* | *APPEAL FROM THE* |
| *THE BEST INTEREST AND* | *§* | *COUNTY COURT AT LAW* |
| *PROTECTION OF C.C.* | *§* | *CHEROKEE COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

C.C. appeals from an order authorizing the Texas Department of State Health Services (the Department) to administer psychoactive medication-forensic. In three issues, C.C. asserts the evidence is legally and factually insufficient to support the trial court's finding that administration of psychoactive medications is in her best interest, that the State does not have an important governmental interest in administering psychoactive medications to her, and that the evidence is legally and factually insufficient to support the trial court's finding that the patient presents a danger. We reverse and render.

## BACKGROUND

On October 12, 2017, Stephen Poplar, M.D. signed an application for an order to administer psychoactive medication-forensic to C.C. In the application, Poplar stated that C.C. was subject to an order for inpatient mental health services issued under Chapter 46B (incompetency to stand trial) of the Texas Code of Criminal Procedure. He stated further that C.C. had been diagnosed with bipolar I disorder, most recent episode manic, severe with psychotic features, and requested the trial court to compel C.C. to take psychoactive medications including antidepressants, anxoilytic/sedative/hypnotics, antipsychotics, and mood stabilizers. According to Poplar, C.C. verbally refused to take the medications and, in his opinion, C.C. lacked the capacity to make a decision regarding administration of psychoactive medications

because she did not believe that she has a mental illness and thus, cannot rationally weigh the risks and benefits of treatment.

Poplar concluded that these medications were the proper course of treatment for C.C. and that, if she were treated with the medications, her prognosis would be fair. He believed that, if C.C. were not administered these medications, the consequences would be an increased risk of harm to others, prolonged hospitalization, and poor quality of life. Poplar considered other medical alternatives to psychoactive medication, but determined that those alternatives would not be as effective. He believed the benefits of the psychoactive medications outweighed the risks in relation to present medical treatment and C.C.'s best interest. Poplar also considered less intrusive treatments likely to secure C.C.'s agreement to take psychoactive medication.

The trial court held a hearing on the application. Poplar testified that he was C.C.'s treating physician, that C.C. was currently under court ordered mental health services under Chapter 46B of the Texas Code of Criminal Procedure, and that he completed the application for an order to administer psychoactive medications-forensic. He reiterated the statements that he made in his application, and testified that C.C. was suffering from bipolar I disorder, most recent episode manic, severe with psychotic features. Poplar stated C.C.'s behaviors suggest that she needs medications because she has had several episodes of aggression such as throwing a plastic chair at a psychiatric nursing assistant before walking away, verbally threatening the staff's children, and slamming a bathroom stall door on a staff member's hand. According to Poplar, C.C. was charged with a false report, a Class B misdemeanor. He stated that C.C. filed approximately thirty complaints of neglect and abuse. Poplar said the medications would not interfere with C.C.'s ability to confer with her attorney in the underlying criminal charge.

On cross examination, Poplar testified that C.C. did not make any statements regarding side effects or potential side effects of the medications. Nor did she make any statements regarding religious beliefs that would prevent her from taking these medications or any general legal objections to her right not to take medications. C.C. testified that she was worried about the side effects of psychoactive medications because she was diagnosed with Hepatitis B when she was young. Consequently, she said, her liver function is "bad" and one medication previously prescribed by a psychologist would make her liver function worse. A second medication that she was prescribed would make her hands, head, and neck shake, and worsen her speech and social ability. One other medication that C.C. had been prescribed made her "pass out much earlier."

C.C. also disputed her mental illness and that she needed to take medication for it. She stated that in her Taiwanese culture, she was taught to not use drugs or take caffeine because it would cause bone deficiency. C.C. denied threatening to kill staff members' children, stating that a nurse assistant used to threaten C.C., telling her that she, the nurse, wanted C.C. to die earlier. C.C. told the nurse assistant that parents "have the misdemeanor and it will impact the children." She also denied slamming a bathroom door on a staff member's hand, stating that she was being attacked and sworn at by the staff. C.C. stated that the staff member pulled the door open, put their arm inside the bathroom, and would not leave her in privacy or let her shut the bathroom door.

At the close of the evidence, the trial court granted the application. After considering all the evidence, including the application and the expert testimony, the trial court found that the allegations in the application were true and correct and supported by clear and convincing evidence. Further, the trial court found that treatment with the proposed medication was in C.C.'s best interest and that C.C. lacked the capacity to make a decision regarding administration of the medication. The trial court authorized the Department to administer psychoactive medications to C.C., including anxiolytics/sedatives/hypnotics, antidepressants, antipsychotics, and mood stabilizers. This appeal followed.

## INVOLUNTARY ADMINISTRATION OF PSYCHOACTIVE MEDICATIONS

In her second issue, C.C. argues that administration of psychoactive medication unconstitutionally deprives her of the liberty to reject medical treatment because the government's interest in bringing her to trial is not an important governmental interest, citing *In re F.H.*, 214 S.W.3d 780 (Tex. App.—Tyler 2007, no pet.). In *In re F.H.*, the patient argued that the trial court erred in granting the order based upon the United States Supreme Court's opinion in *Sell v. United States*, 539 U.S. 166, 123 S. Ct. 2174, 156 L. Ed. 2d 197 (2003). *In re F.H.*, 214 S.W.3d at 782.

### Applicable Law

An individual has a constitutionally protected liberty interest in avoiding the involuntary administration of antipsychotic drugs. *Sell*, 539 U.S. at 178, 123 S. Ct. at 2183; *United States v. Leveck–Amirmokri*, No. EP-04-CR-0961-DB, 2005 WL 1009791, at *3 (W.D. Tex. Mar. 10, 2005). The United States Constitution permits the government to involuntarily administer

antipsychotic drugs to a mentally ill defendant facing serious criminal charges in order to render that defendant "competent to stand trial, but only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests." *Sell*, 539 U.S. at 179, 123 S. Ct. at 2184.  Before antipsychotic drugs can be involuntarily administered when applying the above standard, a court must (1) find that important governmental interests are at stake, (2) conclude that involuntary medication will significantly further those concomitant state interests, (3) conclude that involuntary medication is necessary to further those state interests, and (4) conclude that administration of the drugs is medically appropriate. *Id.*, 539 U.S. at 180-81, 123 S. Ct. at 2184-85.  A court need not consider whether to allow forced medication for purposes of rendering the defendant competent to stand trial if forced medication is warranted for a different purpose, such as the defendant's dangerousness or where refusal to take drugs puts the defendant's health at risk.  *Id.*, 539 U.S. at 181-82, 123 S. Ct. at 2185.

<u>Analysis</u>

As an initial matter, we note that the trial court found that C.C. lacked the capacity to make a decision regarding administration of medications, not that she was a danger to herself or others.  The trial court also found that treatment with the proposed medication was in C.C.'s best interest, but there was no testimony or finding that her health was at risk if she did not take the proposed medications.  Therefore, under *Sell*, we must determine whether the involuntary administration of psychoactive drugs to C.C. in order to render her competent to stand trial was constitutionally permissible.  *See id.*, 539 U.S. at 179, 123 S. Ct. at 2184.

Under the first component of the *Sell* standard, we must determine if there were important governmental interests at stake that necessitated the involuntary administration of these drugs to C.C.  *See id.*, 539 U.S. at 180, 123 S .Ct. at 2184.  The government's interest in bringing to trial an individual accused of a serious crime is important, whether the offense is a serious crime against persons or against property.  *See id.*, 539 U.S. at 180, 123 S. Ct. at 2184. Thus, the relevant question is what constitutes a "serious crime." *See **United States v. Barajas–Torres***, No. CRIM.EP-03-CR-2011KC, 2004 WL 1598914, at *2 (W.D. Tex. July 1, 2004). When addressing other constitutional issues, the United States Supreme Court and the Texas Supreme Court have defined a "serious offense" as one for which a defendant may be sentenced to imprisonment for

more than six months. *See **Baldwin v. New York***, 399 U.S. 66, 69, 90 S. Ct. 1886, 1888, 26 L. Ed. 2d 437 (1970) (determining whether defendant had a right to a jury trial); ***Ex parte Werblud***, 536 S.W.2d 542, 547 (Tex. 1976) (determining whether relator had a right to a jury trial in a contempt hearing). Here, C.C. was charged with a false report, a Class B misdemeanor.[1] If convicted, C.C. may be punished by confinement in jail for a term not to exceed 180 days, or six months.[2] Because C.C.'s potential punishment was not more than six months of imprisonment, the crime C.C. is charged with is not a "serious crime." *See **Baldwin***, 399 U.S. at 69, 90 S. Ct. at 1888; ***Ex parte Werblud***, 536 S.W.2d at 547. Thus, we conclude that no important governmental interests were at stake that necessitated the involuntary administration of psychoactive drugs to C.C. in order to render her competent to stand trial. *See **Sell***, 539 U.S. at 179–80, 123 S. Ct. at 2184. Because the State failed to satisfy the first component of the ***Sell*** standard, we need not consider the remaining three components. We sustain C.C.'s second issue. Because this issue is dispositive, we do not address C.C.'s other issues. *See* TEX. R. APP. P. 47.1.

## DISPOSITION

We *reverse* the trial court's order authorizing the administration of psychoactive medication-forensic. We *render* judgment denying the State's application for an order to administer psychoactive medication-forensic.

**GREG NEELEY**
Justice

Opinion delivered May 31, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

---

[1] TEX. PENAL CODE ANN. § 37.08(a), (c) (West 2016).

[2] TEX. PENAL CODE ANN. § 12.22 (West 2011).



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MAY 31, 2018**

**NO. 12-17-00332-CV**

**THE STATE OF TEXAS FOR THE BEST
INTEREST AND PROTECTION OF C.C.**

Appeal from the County Court at Law

of Cherokee County, Texas (Tr.Ct.No. 42230)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the order of the court below, it is ORDERED, ADJUDGED and DECREED by this Court that the trial court's order authorizing the administration of psychoactive medication-forensic be **reversed** and judgment **rendered** denying the State's application for an order to administer psychoactive medication-forensic; and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*