**The STATE of Texas for the Best Interest and Protection of D.B.**

No. 12–06–00304–CV.

Court of Appeals of Texas, Tyler.

Jan. 31, 2007.

Dana Norris Young, for appellant

Rachel L. Patton, Gordon K. Lemaire, for appellee.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and HOYLE, J.

## OPINION

BRIAN HOYLE, Justice.

D.B. appeals from an order authorizing the administration of psychoactive medication-forensic. In his sole issue, D.B. argues that the trial court erred in granting the order based upon the United States Supreme Court's opinion in *Sell v. United States*, 539 U.S. 166, 123 S.Ct. 2174, 156 L.Ed.2d 197 (2003). We reverse and render.

### BACKGROUND

On August 7, 2006, an application for an order to administer psychoactive medication-forensic was filed by Dr. C.B. Cuellar. In the application, Cuellar stated that D.B. was subject to an order dated August 4 for court ordered inpatient mental health services under Chapter 46B of the Texas Code of Criminal Procedure because he had been found incompetent to stand trial. The clerk's record showed that D.B. was charged with resisting arrest, a Class A misdemeanor. Cuellar stated that D.B. had been diagnosed with schizophrenia, paranoid, continuous. Cuellar wanted the trial court to compel D.B. to take five psychoactive medications: an antidepressant, an anxoilytic/sedative/hypnotic, a mood stabilizer, and two antipsychotics. Cuellar stated that D.B. refused to take the medications voluntarily and that he believed D.B. lacked the capacity to make a decision regarding administration of psychoactive medications because he claimed not to remember anything and denied that he was mentally ill.

Cuellar determined that the proposed medications were the proper course of treatment for D.B. and that if he were treated with the medications, his prognosis would be better and he could improve. However, Cuellar believed that if D.B. was not administered the medications, the consequences would be deterioration. Cuellar considered other medical alternatives to psychoactive medication, but determined that those alternatives would not be as effective. He also considered less intrusive treatments likely to secure D.B.'s agreement to take the psychoactive medications. Finally, Cuellar believed that the benefits of the psychoactive medications

outweighed the risks in relation to present medical treatment and D.B.'s best interest.

On August 15, the trial court held a hearing on the application. Dr. Jon Guidry testified that he was D.B.'s treating physician and that D.B. was currently under court ordered mental health services under Chapter 46B because he had been found incompetent to stand trial. Guidry stated that D.B. verbally refused to accept medications and that he believed D.B. lacked the capacity to make a decision regarding the administration of psychoactive medications. Although Guidry did not complete the application, he reviewed it and agreed with Cuellar's diagnosis of schizophrenia, paranoid type, continuous. He reviewed the medications listed in the application and testified that these medications were in the proper course of treatment and that treatment with these medications was in D.B.'s best interest. Guidry stated that D.B. would likely benefit from the use of these medications, that the benefits outweighed the risks, and that D.B.'s hospital stay would be shortened. Moreover, Guidry testified that there were no less intrusive means of achieving the same or similar results.

On cross examination, Guidry stated that he spoke to D.B. about using medications and that D.B. understood the nature of that conversation. Guidry testified that D.B. stated there was nothing wrong with him and he did not need medications. Although Guidry did not prepare the application, he stated that he would use the same classes and types of medications to treat D.B. He testified that he would start medicating D.B. with antipsychotics and admitted that the proposed medications had side effects, including stiffness, restlessness, and sedation. Guidry believed that with the use of medications, D.B.'s stay at the hospital would be between four to eight weeks. Before closing, D.B. moved for directed verdict based upon *Sell v. United States,* 539 U.S. 166, 123 S.Ct. 2174, 156 L.Ed.2d 197 (2003). The trial court denied D.B.'s motion. The trial court admitted two exhibits, a misdemeanor information and judgment of commitment regarding D.B. Finally, the trial court granted the application, noting that the side effects of the proposed medications would not necessarily impede D.B.'s ability to function in trial proceedings, but would, in fact, improve his mental health and restore his ability to participate in a trial.

On August 15, 2006, after considering all the evidence, including the application and the expert testimony, the trial court found that the allegations in the application were true and correct and supported by clear and convincing evidence. The trial court found that D.B. lacked the capacity to make a decision regarding administration of medications and that treatment with the proposed medication was in D.B.'s best interest. The trial court authorized the Department to administer D.B. psychoactive medications, including antidepressants, antipsychotics, mood stabilizers, and anxiolytics/sedatives/hypnotics. This appeal followed.

### INVOLUNTARY ADMINISTRATION OF PSYCHOACTIVE MEDICATIONS

In his sole issue, D.B. argues that the trial court erred in granting the order authorizing administration of psychoactive medication-forensic. More specifically, D.B. contends that the State has no important governmental interests in medicating him, that involuntary medication will not significantly further any important governmental interests, that involuntary medication is not necessary to further any such interests, and that administration of the drugs is not medically appropriate and in

D.B.'s best medical interest. The State disagrees.

### Applicable Law

An individual has a constitutionally protected liberty interest in avoiding the involuntary administration of antipsychotic drugs. *Sell,* 539 U.S. at 178, 123 S.Ct. at 2183; *United States v. Leveck–Amirmokri,* No. EP–04–CR–0961–DB, 2005 WL 1009791, at *3 (W.D.Tex. Mar.10, 2005). The United States Constitution permits the government to involuntarily administer antipsychotic drugs to a mentally ill defendant facing serious criminal charges in order to render that defendant "competent to stand trial, but only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests." *Sell,* 539 U.S. at 179, 123 S.Ct. at 2184. In applying the above standard, a court must (1) find that important governmental interests are at stake, (2) conclude that involuntary medication will significantly further those concomitant state interests, (3) conclude that involuntary medication is necessary to further those state interests, and (4) conclude that administration of the drugs is medically appropriate. *Id.,* 539 U.S. at 180–81, 123 S.Ct. at 2184–85. A court need not consider whether to allow forced medication for purposes of rendering the defendant competent to stand trial if forced medication is warranted for a different purpose, such as the defendant's dangerousness or where refusal to take drugs puts the defendant's health at risk. *Id.,* 539 U.S. at 181–82, 123 S.Ct. at 2185.

### Analysis

As an initial matter, we note that there is no evidence that D.B. was dangerous to himself or others. The trial court found that D.B. lacked the capacity to make a decision regarding administration of medications, not that he was a danger to himself or others. The trial court also found that treatment with the proposed medications was in D.B.'s best interest, but there was no testimony or finding that his health was at risk if he did not take the proposed medications. Therefore, under *Sell,* we must determine whether the involuntary administration of psychoactive drugs to D.B. in order to render him competent to stand trial was constitutionally permissible. *See id.,* 539 U.S. at 179, 123 S.Ct. at 2184.

Under the first component of the *Sell* standard, we must determine if there are important governmental interests at stake that necessitate the involuntary administration of these drugs to D.B. *See id.,* 539 U.S. at 180, 123 S.Ct. at 2184. The government's interest in bringing to trial an individual accused of a serious crime is important, whether the offense is a serious crime against persons or property. *See id.,* 539 U.S. at 180, 123 S.Ct. at 2184. Thus, the relevant question is what constitutes a "serious crime." *See United States v. Barajas–Torres,* No. CRIM.EP–03–CR–2011KC, 2004 WL 1598914, at *2 (W.D.Tex. July 1, 2004). When addressing other constitutional issues, the United States Supreme Court and the Texas Supreme Court have defined a "serious offense" as one for which a defendant may be sentenced to imprisonment for more than six months. *See Baldwin v. New York,* 399 U.S. 66, 69, 90 S.Ct. 1886, 1888, 26 L.Ed.2d 437 (1970) (determining whether defendant had a right to a jury trial); *Ex parte Werblud,* 536 S.W.2d 542, 547 (Tex.1976) (determining whether relator had a right to a jury trial in a contempt hearing). Here, D.B. was charged with

resisting arrest, a Class A misdemeanor.[1] If convicted, D.B. may be punished by confinement in jail for a term not to exceed one year.[2] Because D.B.'s potential punishment is more than six months of imprisonment, the crime D.B. is charged with is a "serious crime." *See Baldwin,* 399 U.S. at 69, 90 S.Ct. at 1888; *Ex parte Werblud,* 536 S.W.2d at 547. Thus, we conclude that important governmental interests are at stake in involuntarily administering psychoactive drugs to D.B. in order to render him competent to stand trial. *See Sell,* 539 U.S. at 180, 123 S.Ct. at 2184.

 In addition to finding that important governmental interests are at stake, we must determine whether involuntary medication will significantly further those interests. *Sell,* 539 U.S. at 181, 123 S.Ct. at 2184; *Leveck–Amirmokri,* 2005 WL 1009791, at *4. Specifically, we must find that administration of these drugs is substantially likely to render D.B. competent to stand trial and that they are substantially unlikely to have side effects that will interfere significantly with D.B.'s ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair. *Sell,* 539 U.S. at 181, 123 S.Ct. at 2184–85. Here, Cuellar stated that if D.B. was treated with psychoative medications, his prognosis was "better" and that he could improve. Guidry stated that D.B. would likely benefit if he was treated with the proposed medications. However, there was no evidence or testimony that administration of these medications was substantially likely to render D.B. competent to stand trial. *See id.,* 539 U.S. at 181, 123 S.Ct. at 2184. Thus, we conclude that involuntarily administering psychoactive drugs to D.B. would not significantly further important governmental interests. *See id.,* 539 U.S. at 181, 123 S.Ct. at 2184.

Because the State failed to satisfy the second component of the *Sell* standard, we need not consider the remaining two components. Accordingly, D.B.'s sole issue is sustained.

### DISPOSITION

We *reverse* the trial court's order authorizing the administration of psychoactive medication-forensic. We *render* judgment denying the State's application for an order to administer psychoactive medication-forensic.

---

1. *See* TEX. PEN.CODE ANN. § 38.03(a), (c) (Vernon 2003).

2. *See* TEX. PEN.CODE ANN. § 12.21 (Vernon 2003).