# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00317-CV

**R. M., Appellant**

**v.**

**The State of Texas by and through the Travis County Attorney Acting on behalf of the Texas Department of State Health Services, and Thomas Tan, M.D., Appellees**

### FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY
### NO. 95,519, HONORABLE GUY S. HERMAN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

R.M., a pre-trial detainee subject to an order from a criminal court for inpatient mental health services, appeals from the probate court's order authorizing the Texas Department of State Health Services to administer psychoactive medication to R.M.[1]  In two issues, R.M. contends that the trial court's findings of fact and conclusions of law were insufficient to deprive him of his constitutional "fundamental liberty interest from forced medication" and that the trial court's order deprived him of equal protection under the law.  For the reasons that follow, we affirm the probate court's order.

---

[1]  The parties filed an unopposed motion to expedite a decision from this Court.  We have expedited this Court's decision in accordance with the appellate rules and the health and safety code. *See* Tex. R. App. P. 2; Tex. Health & Safety Code Ann. § 574.070(e) (West 2003).  We, therefore, deny the motion as moot.

# BACKGROUND

R.M. was indicted for the criminal offense of tampering with a consumer product for putting "holy water" on "crab legs" at a grocery store. *See* Tex. Penal Code Ann. § 22.09 (West 2003). By agreed order, a Travis County criminal district court found R.M. incompetent to stand trial on or about April 4, 2008, and ordered R.M. "committed to a mental health facility or residential care facility . . . for observation and or treatment for a period not to exceed 120 days." *See* Tex. Code Crim. Proc. Ann. art. 46B.073(b) (West Supp. 2008). R.M. was committed to the Austin State Hospital (the "Hospital").

On April 24, 2008, Dr. Thomas Tan, M.D./D.O., a psychiatrist at the Hospital, filed an application with the probate court of Travis County pursuant to the health and safety code to administer psychoactive medication to R.M. *See* Texas Health & Safety Code § 574.104 (West Supp. 2008). In the application, Tan stated R.M.'s diagnosis—"schizophrenic disorder, paranoid"—and that R.M. verbally refused the proposed treatment of psychoactive medication.[2] Tan stated his beliefs that R.M. "lack[ed] the capacity to make a decision regarding administrating of said medication" and R.M. "presents a danger to self or others in the in-patient mental health facility." Tan further stated that he had considered medical alternatives, including less intrusive treatments, but that the medical alternatives would not be as effective as administrating the medication, and that he believed the benefits of the medication outweighed the risks. Tan sought an order from the probate court authorizing the Texas Department of State Health Services to administer psychoactive medication to R.M. regardless of R.M.'s refusal.

---

[2] Tan proposed the following classes of psychoactive medication for treating R.M.: antipsychotics, anxiolytics/sedatives/hypnotics, and mood stabilizers.

On April 30, 2008, the trial court held a hearing on Tan's application. R.M. was represented by counsel at the hearing. In addition to Tan, the State called a member of R.M.'s treatment team at the Hospital, Cheyenne Ligon, and R.M.'s mother. Tan testified to his statements and opinions in the application, including the diagnosis of R.M.'s condition and R.M.'s actions that formed the basis of Tan's opinions. He testified that R.M. verbally threatened the staff and was a danger to himself and others at the Hospital. He opined that the administration of psychoactive medication was in R.M.'s best interest and that R.M. did not have the capacity to make a decision regarding the medication treatment because "he has no understanding of his own mental illness." Consistent with Tan's testimony, Ligon testified that R.M. lacked the capacity to make a decision regarding the administration of the medication and that he was a danger to himself and others, providing her observations of R.M.'s actions at the Hospital. R.M.'s mother testified that she had almost daily contact with her son during the last twelve months and that he "needs the medications":

Q. And have you had a chance to visit with your son since he's been at the Austin State Hospital?

A. Yes, two times.

Q. And what has been your observation of his demeanor since he's been here?

A. Well, I feel very sorry because my son is just deteriorating and nothing is being done because of the laws. He needs the medication.

R.M.: I'm 36 years old. I'm not—

The witness: He needs to be stabilized. And it's been just a nightmare in order for my son to get the treatment he needs.

Q. And how much contact have you had with your son during the last 12 months?

A. Almost daily.

3

She also testified that R.M. had taken psychoactive medication in the past that had helped him and that he could be a danger to himself and others because he "stopped the medication." R.M. was the only witness to testify in opposition to the application.

At the hearing's conclusion, the probate court stated its findings that, by clear and convincing evidence, R.M. lacked the capacity to make a decision regarding the administration of psychoactive medication and that it was in R.M.'s best interest to be treated with the medication "for a period not to exceed his tenure under 46B." The probate court subsequently entered an order authorizing the Hospital to administer psychoactive medication to R.M. The probate court also entered findings of fact and conclusions of law that included that R.M. lacked the capacity to make a decision regarding administration of psychoactive medication and that treatment with the medication was in R.M.'s best interest. This appeal followed.

**DISCUSSION**

R.M. raises two issues on appeal. In his first issue, he contends that the probate court's order deprives him of his "fundamental liberty interest in freedom from forced medication" because the court's findings of fact and conclusions of law were "insufficient to justify depriving him of substantive due process and due course of law under the Fourteenth Amendment to the United States Constitution and Article 1, Section 19 of the Texas Constitution." *See* U.S. Const. amend. XIV, § 1; Tex. Const. art. I, § 19. In his second issue, R.M. contends that the probate court's application of section 574.106 of the health and safety code deprived him of "equal protection of substantive due process." *See* U.S. Const. amend. XIV, § 1; Tex. Health & Safety Code Ann. § 574.106 (West Supp. 2008).

4

Our consideration of this appeal involves matters of statutory construction and an "as-applied" challenge to the constitutionality of a statute. We review matters of statutory construction *de novo*, and our primary goal is to determine and give effect to the legislature's intent. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). In construing statutes, we begin with the plain language of the statute at issue and apply its common meaning. *Id*. Where the statutory text is unambiguous, we adopt a construction supported by the statute's plain language, unless that construction would lead to an absurd result. *Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999). "If possible, we construe a statute in a manner that renders it constitutional and gives effect to the Legislature's intent." *Texas Mun. League v. Tex. Workers' Comp. Comm'n*, 74 S.W.3d 377, 381 (Tex. 2002).

We also review questions that raise constitutional concerns *de novo*. *Perry v. Del Rio*, 67 S.W.3d 85, 91 (Tex. 2001). Under an "as applied" challenge, the challenging party contends that the statute, although generally constitutional, operates unconstitutionally as to the party because of the challenging party's particular circumstances. *Texas Boll Weevil Eradication Found. v. Lewellen*, 952 S.W.2d 454, 461 n. 5 (Tex. 1997). "In an as-applied constitutional challenge, we must evaluate the statute as it operates in practice against the particular plaintiff." *Texas Mun. League*, 74 S.W.3d at 381. "The burden is on the party attacking the statute to show that it is unconstitutional." *Id*.

The issues in this case involve the interplay and construction of the statutory schemes under the code of criminal procedure and the health and safety code after a determination of incompetency to stand trial and a request for the administration of psychoactive medication to a patient in inpatient mental health facilities when the patient refuses the medication. *See* Tex. Code

Crim. Proc. Ann. art. 46B (West 2006 & Supp. 2008); Tex. Health & Safety Code Ann. §§ 574.101-.110 (West 2003 & Supp. 2008) (Subchapter G, "Administration of Medication to Patient under Order for Inpatient Mental Health Services").

After a defendant is determined incompetent to stand trial, article 46B.071 of the code of criminal procedure provides the options that are available to a court:

On a determination that a defendant is incompetent to stand trial, the court shall:

(1)     commit the defendant to a facility under Article 46B.073; or

(2)     release the defendant on bail under Article 46B.072.

Tex. Code Crim. Proc. Ann. art. 46B.071. A court may not release a defendant on bail unless the court finds that the defendant is "not a danger to others and may be safely treated on an outpatient basis." *Id*. art. 46B.072(a). R.M. was committed to the Hospital pursuant to Article 46B.073(b). Article 46B.073(b) provides that "[t]he court shall commit a defendant [not released on bail] to a mental health facility or residential care facility for a period not to exceed 120 days for further examination and treatment toward the specific objective of attaining competency to stand trial." *Id*. art. 46B.073(b).

Article 46B.086 provides the procedures for the court in which the criminal proceedings are pending to authorize psychoactive medications of a defendant that has been committed to a facility pursuant to article 46B. *Id*. art. 46B.086. The court may issue an order only if it is supported by the testimony of two physicians, *see id.* art. 46B.086(d), and if the court finds by clear and convincing evidence:

6

(1)     the prescribed medication is medically appropriate, is in the best medical interest of the defendant, and does not present side effects that cause harm to the defendant that is greater than the medical benefit to the defendant;

(2)     the state has a clear and compelling interest in the defendant obtaining and maintaining competency to stand trial;

(3)     no other less invasive means of obtaining and maintaining the defendant's competency exists; and

(4)     the prescribed medication will not unduly prejudice the defendant's rights or use of defensive theories at trial.

*Id*. art. 46B.086(e) (adopting findings set out in *Sell v. United States*, 529 U.S. 166, 179-181 (2003), to permit government to administer antipsychotic drugs to mentally ill defendant against his will to render defendant competent to stand trial).  The applicability of article 46B.086 to a defendant, however, is limited to certain situations:

(a)     This article applies only to a defendant:

(1)     who is determined under this chapter to be incompetent to stand trial;

(2)     for whom an inpatient mental health facility, residential care facility, or outpatient treatment program provider has prepared a continuity of care plan that requires the defendant to take psychoactive medications; and

(3)     who, after a hearing held under Section 574.106, Health and Safety Code, has been found not to meet the criteria prescribed by Sections 574.106(a) and (a-1), Health and Safety Code, for court-ordered administration of psychoactive medications; or

(4)     who is subject to Article 46B.072.

*Id*. art. 46B.086(a).  One situation in which article 46B.086 does not apply is when a defendant meets

7

the criteria under section 574.106 of the health and safety code for court-ordered administration of psychoactive medications.  *Id*.  art. 46B.086(a)(3).

Section 574.106 provides that a probate court may authorize psychoactive medications for a patient receiving inpatient mental health services and states, in pertinent part, the required findings to support authorization:

(a)     The court may issue an order authorizing the administration of one or more classes of psychoactive medication to a patient who:

(1)     is under a court order to receive inpatient mental health services; or

(2)     is in custody awaiting trial in a criminal proceeding and was ordered to receive inpatient mental health services in the six months preceding a hearing under this section.

(a-1)   The court may issue an order under this section only if the court finds by clear and convincing evidence after the hearing:

(1)     that the patient lacks the capacity to make a decision regarding the administration of the proposed medication and treatment with the proposed medication is in the best interest of the patient; or

(2)     if the patient was ordered to receive inpatient mental health services by a criminal court with jurisdiction over the patient, that:

(A)     the patient presents a danger to the patient or others in the inpatient mental health facility in which the patient is being treated as a result of a mental disorder or mental defect as determined under Section 574.1065; and

(B)     treatment with the proposed medication is in the best interest of the patient.

8

Tex. Health & Safety Code Ann. § 574.106(a), (a-1).³ Section 574.101(1) defines capacity to mean:

> (1)  "Capacity" means a patient's ability to:
>
> > (A)  understand the nature and consequences of a proposed treatment, including the benefits, risks, and alternatives to the proposed treatment; and
> >
> > (B)  make a decision whether to undergo the proposed treatment.

*Id*. § 574.101(1). Section 574.102 provides that subchapter G "applies to the application of medication to a patient subject to an order for inpatient mental health services under this chapter or other law." *Id*. § 574.102. R.M. does not dispute that, as a patient subject to an order for inpatient mental health services pursuant to article 46B of the code of criminal procedure, he is subject to

---

³ Section 574.1065 of the health and safety code provides the factors that a court should consider in making a finding pursuant to section 574.106(a-1)(2) that a patient presents a danger:

> In making a finding under Section 574.106 (a-1)(2) that the patient presents a danger to the patient or others in the inpatient mental health facility in which the patient is being treated as a result of a mental disorder or mental defect the court shall consider:
>
> > (1)  an assessment of the patient's present mental condition;
> >
> > (2)  whether the patient has inflicted, attempted to inflict, or made a serious threat of inflicting substantial physical harm to the patient's self or to another while in the facility; and
> >
> > (3)  whether the patient, in the six months preceding the date the patient was placed in the facility, has inflicted, attempted to inflict, or made a serious threat of inflicting substantial physical harm to another that resulted in the patient being placed in the facility.

Tex. Health & Safety Code Ann. § 574.1065 (West Supp. 2008).

subchapter G and, particularly, section 574.106. *See id*. § 574.106. His issues address the probate court's construction and application of section 574.106.

In his first issue, R.M. contends that the probate court's findings of fact and conclusions of law were insufficient to deprive him of his "liberty" from forced medication because the court did not find that he was dangerous. *See* U.S. Const. amend. XIV, § 1; Tex. Const. art. I, § 19.[4] Based on the statute's text, R.M. contends section 574.106(a-1)(2) required a finding that R.M. presented a danger to himself or others before the court was authorized to order the administration of psychoactive medication. *See* Tex. Health & Safety Code Ann. § 574.106(a-1)(2). Based on an examination of the record, however, even if we were to adopt R.M.'s construction of section 574.106, the evidence before the probate court showed that R.M. was a danger to himself and to others in the inpatient mental health facility. *See id*. § 574.1065 (factors the court shall consider to find patient presents danger).

---

[4] The Fourteenth Amendment of the United States Constitution states:

No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1. Article 1, Section 19 of the Texas Constitution states:

No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land.

Tex. Const. art. I, § 19. We generally construe the due course clause in the same manner as its federal counterpart. *See Texas Workers' Comp. Comm'n v. Patient Advocates of Tex*., 136 S.W.3d 643, 658 (Tex. 2004).

R.M. was not released on bail but committed to the Hospital. Tan testified to R.M.'s present mental condition and his threats at the Hospital "to get us all killed," and that he was "confrontational with other patients" and "with the staff." Ligon similarly testified that "I have felt in danger of my person" and she did not feel "comfortable being alone anywhere near [R.M.]." R.M.'s mother testified that she had daily contact with her son over the last year and that he could be a danger to himself and others because he "stopped the medication." Tan, Ligon, and R.M.'s mother all testified consistently that R.M. was a danger to himself and others. Based on this evidence, we may presume a finding of dangerous in support of the probate court's order. *See* Tex. R. Civ. P. 299 ("[W]hen one or more elements thereof have been found by the trial court, omitted unrequested elements, when supported by evidence, will be supplied by presumption in support of the judgment.").

As part of his first issue on appeal, R.M. also contends that his substantive due process and due course of law rights required the probate court to apply the standards set forth in *Sell v. United States*, 539 U.S. at 179-81, before authorizing the Hospital to administer psychoactive medication to R.M. against his will. In *Sell*, the United States Supreme Court addressed whether the "forced administration of antipsychotic drugs to render [a non-dangerous defendant] competent to stand trial unconstitutionally deprive[d] him of his 'liberty' to reject medical treatment." *Id*. at 177, 185. Recognizing that an individual has a "constitutionally protected liberty 'interest in avoiding involuntary administration of antipsychoytic drugs'—an interest that only an 'essential' or 'overriding' state interest may overcome," the Supreme Court in *Sell* set forth standards for finding the state's interest overrides the individual's "liberty" interest to support forced medication. *See id.*

11

at 178-81 (quoting *Riggins v. Nevada*, 504 U.S. 127, 134 (1992)); *see also* Tex. Code Crim. Proc. Ann. art. 46B.086(e) (standards adopted as set forth in *Sell* before court in which criminal proceeding is pending may authorize court-ordered psychoactive medications); *State ex. rel. D.B.*, 214 S.W.3d 209, 212 (Tex. App.—Tyler 2007, no pet.) ("An individual has a constitutionally protected liberty interest in avoiding the involuntary administration of antipsychotic drugs.").

The Supreme Court in *Sell*, however, distinguished the trial competency question that it faced from civil matters in which involuntary treatment is sought when a dangerous patient lacks the capacity to make psychoactive medication treatment decisions. *Id*. at 181-82. When "forced medication" is for another purpose, the Supreme Court emphasized that it may be justified without turning to the standards that apply to the trial competency question:

> We emphasize that the court applying these standards is seeking to determine whether involuntary administration of drugs is necessary significantly to further a particular governmental interest, namely, the interest in rendering the defendant *competent to stand trial*. A court need not consider whether to allow forced medication for that kind of purpose, if forced medication is warranted for a *different* purpose, such as the purposes . . . related to the individual's dangerousness, or purposes related to the individual's own interests where refusal to take drugs puts his health gravely at risk. . . . There are often strong reasons for a court to determine whether forced administration of drugs can be justified on these alternative grounds *before* turning to the trial competence question.

*Id*. (internal citation omitted); *see also State ex. rel. D.B.*, 214 S.W.3d at 212 (court applied *Sell* standards to reverse order authorizing forced psychoactive medication to make defendant competent to stand trial; trial court's order based on defendant's lack of capacity to make medical treatment decision but there was no evidence that defendant was danger to self or others). Tan's application

to medicate R.M. was brought as part of R.M.'s treatment program in an inpatient mental health facility—not "solely to render [R.M.] competent to stand trial." *See Sell*, 539 U.S. at 175. Based on this record, we conclude that the probate court did not deprive R.M. of his "liberty interest in freedom from forced medication" by authorizing the Hospital to administer psychoactive medication to R.M. without first finding that the standards set forth in *Sell* were satisfied. We overrule R.M.'s first issue.

In his second issue, R.M. contends that the probate court denied him "equal protection of substantive due process." The equal protection clause of the Fourteenth Amendment forbids a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Equal protection challenges are subject to a rational-basis review. *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 2008 Tex. LEXIS 457, at *30 (Tex. 2008) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). This rational-basis review requires a court to answer two questions: "'(1) Does the challenged legislation have a legitimate purpose? and (2) Was it reasonable for the lawmakers to believe that use of the challenged classification would promote that purpose?'" *Id.* (quoting *W. & S. Life Ins. Co. v. State Bd. of Equalization*, 451 U.S. 648, 668 (1981)).

R.M. contends that he was denied equal protection by the probate court's construction and application of section 574.106(a-1) to him because pre-trial detainees who are not dangerous and have the capacity to make medical decisions are transferred back to criminal court for a hearing pursuant to the standards in *Sell* before they may be forced to take psychoactive medication to restore trial competency. *See* Tex. Code Crim. Proc. Ann. art. 46B.086(e). R.M. contends that "his capacity

13

to make a medical decision is not sufficient justification for the state to provide him less substantive and procedural due process than it gives to pre-trial detainees who do have the capacity to make medical decisions." Because R.M.'s challenge is as-applied, we evaluate the statute as it operates in practice against him. *See Texas Mun. League*, 74 S.W.3d at 381. R.M.'s equal protection argument depends on the probate court's omission in its findings of fact and conclusions of law that R.M. is dangerous. As previously stated, the evidence at the hearing supports a finding that R.M. was a danger to himself and others at the Hospital. R.M., therefore, does not fall within the class of individuals that he contends would be unequally treated by the probate court's construction and application of the statute.

In any event, differentiating patients in inpatient mental health facilities based on their capacity to make psychoactive medication treatment decisions is reasonable and serves a legitimate purpose. The statutory schemes under the code of criminal procedure and the health and safety code strike a balance between the interests of the government and mentally ill defendants, and the distinction between patients with capacity to make psychoactive medication decisions and those without capacity is part of this balance. *See generally* Tex. Code Crim. Proc. Ann. art. 46B; Tex. Health & Safety Code Ann. §§ 574.101-.110. The statutory scheme allows patients with the ability to do so to have input as to their treatment. We conclude that the probate court's order did not deny R.M. equal protection under the law and overrule R.M.'s second issue.

14

## CONCLUSION

For the reasons stated, we affirm the probate court's order, authorizing the Texas Department of State Health Services to administer psychoactive medication to R.M.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Waldrop and Henson

Affirmed

Filed:   September 26, 2008

15