

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-13-00812-CV

**THE STATE OF TEXAS FOR THE BEST INTEREST AND PROTECTION OF S.O.**

From the Probate Court No. 1, Bexar County, Texas
Trial Court No. 2013MH3313
Honorable Polly Jackson Spencer, Judge Presiding[1]

Opinion by:   Marialyn Barnard, Justice

Sitting:      Marialyn Barnard, Justice
              Patricia O. Alvarez, Justice
              Luz Elena D. Chapa, Justice

Delivered and Filed:  August 13, 2014

AFFIRMED

This is an accelerated appeal from the trial court's order compelling psychoactive medications.  On appeal, S.O. contends the evidence is legally and factually insufficient to show he lacks capacity to make decisions about the proposed medication and that the proposed treatment is in his best interest.  S.O. further contends he has a constitutionally protected liberty interest in avoiding the involuntary administration of medication, and the State failed to demonstrate an important governmental interest sufficient to overcome that liberty interest pursuant to *Sell v. United States*, 539 U.S. 166 (2003).  We affirm the trial court's judgment.

---

[1] David A. Berchelman Jr., former presiding judge of the 37th Judicial District Court, Bexar County, Texas, sitting as a criminal law magistrate, signed the initial forced medication order.  However, a conformed order was subsequently signed by the Honorable Polly Jackson Spencer, presiding judge of Probate Court No. 1, Bexar County, Texas in response to S.O.'s request for a de novo hearing.  It is this order from which the appeal is taken pursuant to S.O.'s second amended notice of appeal.

## BACKGROUND

S.O. was arrested and charged with the offense of indecency with a child by exposure. Thereafter, S.O.'s counsel filed a "Motion for Psychiatric Examination and Pre-Trial Hearing for Defendant's Competency to Stand Trial." Counsel also filed a notice advising of his intent to raise an insanity defense.

The trial court granted the motion for psychiatric examination and after examining S.O., Dr. Brian P. Skop submitted a report to the court in which he opined that S.O. was incompetent to stand trial. After a competency hearing, the trial court rendered an agreed judgment of incompetency, ordering S.O. committed for in-patient treatment for one hundred and twenty days. S.O. was committed to the North Texas State Hospital ("the hospital") for examination and treatment "toward the specific objective of attaining competency to stand trial."

At the hospital, S.O. declined to take his prescribed medication. Accordingly, Dr. Sandy Le, a psychiatrist with the hospital's competency program, filed an application in the probate court seeking an order to administer psychoactive medication to S.O. despite his refusal. At the hearing on Dr. Le's application, Dr. Le testified as an expert without objection by S.O. She was the only witness to testify.

At the hearing, Dr. Le testified S.O. was admitted to the hospital on October 16, 2013. Five days later, she prepared the application to medicate S.O. Although Dr. Le did not personally meet with S.O. until after she prepared and filed the application, she testified S.O. had been evaluated by other providers at the hospital prior to the preparation of the application, she had spoken with the other providers, and reviewed the treatment team's report. She ultimately met with S.O. twice, each time for approximately ten minutes.

Dr. Le opined that S.O. suffers from mental illness, specifically "schizoaffective disorder bipolar type." According to Dr. Le, because of his mental illness, S.O. posed a danger to himself

and others.  Dr. Le further testified S.O. lacked the capacity to make decisions regarding treatment for his illness, and therefore she requested the court to order antipsychotic medication and mood stabilizers for S.O.

Dr. Le stated she was requesting a court order to administer antipsychotic medications and mood stabilizers.  She advised the court that the benefits of taking the antipsychotic medications and mood stabilizers outweighed any risk from those medications.  Dr. Le also testified the recommended medication would, if taken consistently, improve S.O.'s psychotic symptoms and stabilize his moods.  She stated that with the medication it was more likely that S.O. would regain his competency and be able to stand trial.

Dr. Le testified S.O. refused to sign consent forms for the recommended medications when he was first admitted to the hospital.  However, on the morning of the hearing, S.O. told Dr. Le he might be willing to take the medication.

During cross-examination by S.O.'s counsel, Dr. Le admitted that although she had specifically chosen Haloperidol — an antipsychotic drug — and Valproic Acid — a mood stabilizer — for S.O., her application requested a class of medications as opposed to merely requesting the designated medications.  Dr. Le explained that she requested a class of medications because, "I believe it would be better, in case he had adverse effects, to be able to switch to a different medication in that class."[2]  Dr. Le admitted that if S.O. had any pre-existing medical conditions of which she was unaware this might exacerbate side effects from the drugs.  She also noted that certain side effects are irreversible.  S.O.'s counsel specifically pointed out that S.O. suffered from hypothyroidism, and the doctor agreed the medications could have a negative impact

---

[2] S.O.'s counsel listed numerous possible side effects of both Haloperidol and Valproic Acid.  Dr. Le agreed all of the side effects listed by counsel were potential side effects of the drugs she requested.

given that condition. She noted she was aware S.O. had previously received mental health treatment.

On redirect, Dr. Le testified that her decision to file the application for involuntary medication was based on previous records from other doctors who had seen S.O., recommendations made by Dr. Skop in his report for the commitment hearing, and discussions with S.O.'s treatment team at the hospital. She stated her intent to monitor S.O. after he is medicated to determine if the medications cause adverse side effects or bad reactions. If so, Dr. Le stated she would adjust the medications accordingly. With no objections from S.O.'s counsel, the court took judicial notice of Dr. Le's application to compel medications and all its attachments.

After the hearing, the magistrate signed an order authorizing the administration of psychoactive medications to S.O., and thereafter, the probate court rendered a conformed order authorizing the administration of psychoactive medications.[3]

## ANALYSIS

As noted above, on appeal S.O. contends: (1) the evidence is legally and factually insufficient to show he lacks capacity to make decisions regarding the recommended medications and that the proposed treatment is in his best interest; and (2) he has a constitutionally protected liberty interest in avoiding forced medication, and the State failed to demonstrate an important governmental interest sufficient to overcome that interest as required by *Sell*.

### *Legal and Factual Sufficiency*

S.O. first contends the evidence was both legally and factually insufficient to prove he lacks capacity to make decisions regarding the recommended medications and that the proposed

---

[3] The probate court's written order was not in the original clerk's record filed in this court. However, we contacted the probate court and determined such an order did, in fact, exist. Accordingly, we ordered the clerk to file a supplemental clerk's record containing the probate court's order.

treatment is in his best interest. S.O. was ordered to receive inpatient mental health services by a criminal court that had jurisdiction over him. Thus, we hold the State was not required to prove that he lacks capacity to make decisions regarding his treatment and the treatment is in his best interest, but that the proposed treatment is in S.O.'s best interest and S.O. presents a danger to himself or others in the mental health facility as a result of a mental disorder or defect pursuant to section 574.1065 of the Health & Safety Code.[4] TEX. HEALTH & SAFETY CODE ANN. § 574.106(a-1)(2)(A) (West 2010).

*Standard of Review*

When the State seeks to forcibly medicate an individual, it must prove by clear and convincing evidence that: (1) the individual lacks capacity to make decisions regarding the proposed medication and the treatment is in the best interest of the patient; *or* (2) if the individual was ordered to receive inpatient mental health services by a criminal court with jurisdiction over the individual, that the proposed treatment is in the best interest of the individual and either (a) the individual presents a danger to himself or others in the mental health facility, or (b) the patient presents a danger to himself or others in the correctional facility in which he is housed. TEX. HEALTH & SAFETY CODE ANN. § 574.106(a-1).[5] Under either scenario, in deciding whether forced

---

[4] Section 574.1065 requires the trial court to consider: (1) an assessment of the individual's present mental condition; (2) whether the individual has inflicted or attempted to inflict, or made a serious threat of inflicting substantial physical harm to himself or another while in the facility; and (3) whether the individual, in the prior six months, has inflicted, attempted to inflict, or made a serious threat of inflicting substantial physical harm to another that resulted in the patient being placed in the mental health facility. TEX. HEALTH & SAFETY CODE ANN. § 574.1065.

[5] Accordingly, contrary to S.O.'s claim, the State need not establish he lacked capacity to make decisions regarding the proposed medication. However, if we were required to determine, as S.O. contends, the legal and factual sufficiency of the evidence with regard to whether S.O. lacked capacity to make decisions regarding his treatment, we would find the evidence sufficient. "Capacity" is defined as an individual's ability to: (1) understand the nature and consequences of a proposed treatment, including the benefits, risks, and possible alternative treatments; and (2) make a decision whether to undergo the proposed treatments. TEX. HEALTH & SAFETY CODE ANN. § 574.101(1). Dr. Le specifically testified S.O. lacked the capacity to make decisions regarding treatment for his illness, which she opined was "schizoaffective disorder bipolar type." Her opinion was based on not only on her meetings with S.O., but records from other doctors who had seen S.O., recommendations by Dr. Skop in his report, and conversations with the hospital's treatment team. The referenced documents were attached to Dr. Le's application, the trial court took judicial notice of the application and its attachments, and the documents are part of the appellate record.

medication is in the best interest of the individual, the trial court must consider the individual's preferences, the individual's religious beliefs, the risks and benefits from the individual's perspective, the consequences to the individual if the medications are not administered, the prognosis if the medications are administered, alternatives to forced medication, and less intrusive treatments that are likely to secure the individual's agreement to take the recommended medications. *Id.* § 574.106(b). Clear and convincing evidence is a "measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010) (quoting *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979) (per curiam)); *see In re E.T.*, 137 S.W.3d 698, 699 (Tex. App.—San Antonio 2004, no pet.). "This intermediate standard falls between the preponderance standard of civil proceedings and the reasonable doubt standard of criminal proceedings." *In re C.S.*, 208 S.W.3d 77, 83 (Tex. App.—Fort Worth 2006, pet. denied).

When reviewing whether a forced medication order is supported by legally sufficient evidence under the clear and convincing standard of proof, we must look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that the alleged fact is true. *See In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). "To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review," we must assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* Moreover, the reviewing court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* If, after conducting a legal sufficiency review we conclude no reasonable factfinder could form a firm belief or conviction that the matter required to be proved is true, then we must conclude the evidence is insufficient. *Id.*

In reviewing a factual sufficiency challenge of such an order, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations. *See id.* (citing *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *J.F.C.*, 96 S.W.3d at 266; *see C.H.*, 89 S.W.3d at 25. We must continue to give deference to the role of the factfinder, who is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *C.H.*, 89 S.W.3d at 27.

### *Application*

We begin by noting there is no dispute that S.O. was ordered to receive inpatient mental health services by a criminal court with jurisdiction over him. Thus, we need only determine if the evidence is legally and factually sufficient to establish the proposed treatment is in S.O.'s best interest and he presents a danger to himself or others in the mental health facility. *See* Tex. HEALTH & SAFETY CODE ANN. § 574.106(a-1)(2)(A). Considering the evidence presented at the forced medication hearing in the light most favorable to the trial court's order, we conclude the evidence is legally sufficient to sustain the order because a reasonable factfinder could have determined the evidence clearly and convincingly proves that forced administration of psychoactive medications is in S.O.'s best interest and he presents a danger to himself or others in the mental health facility. *See J.F.C.*, 96 S.W.3d 266; *see also* Tex. HEALTH & SAFETY CODE ANN. § 574.106(a–1)(2)(A). We also conclude the evidence is factually sufficient when considered as a whole because the trial court could have reasonably formed a firm belief or conviction about the truth of the State's allegations that forced medication was in S.O.'s best interest and he was a danger to himself or others. *See J.F.C.*, 96 S.W.3d 266.

As detailed above, Dr. Le testified S.O. suffered from "schizoaffective disorder bipolar type," experiencing mood instability and psychotic symptoms. Dr. Le admitted there were risks in taking the medications, especially considering certain aspects of S.O.'s health. However, she also testified the benefits S.O. would experience from taking the recommended medications outweighed any potential risks. Dr. Le opined that if the recommended medications were taken consistently, S.O.'s psychotic symptoms would improve and his moods would stabilize. It is obvious Dr. Le believed that in the absence of forced medication, S.O. would not improve. Dr. Le stated that although S.O. initially refused the recommended medications, the morning of the hearing he told her he might be willing to take the medications, which is some evidence regarding his preference. From this testimony it is clear Dr. Le believed forced medication was in S.O.'s best interest. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.106(b).

We recognize that an expert's bare diagnosis is insufficient to sustain a forced medication order; the State must present evidence of the behavior of the individual, i.e., the factual bases for the expert's opinions. *State ex rel. E.E.*, 224 S.W.3d 791, 794 (Tex. App.—Texarkana 2007, no pet.). Although at first glance, it might appear Dr. Le provided nothing more than conclusions coupled with a bare diagnosis, she specifically testified her decision to seek a forced medication order was based not merely on her two meetings with S.O., but previous records from other doctors who had seen S.O., recommendations from Dr. Skop as detailed in his report, and consultations with S.O.'s treatment team. The documents she relied upon, which the lower court judicially noticed without objection, included statements by other physicians that S.O.:

- was disoriented;
- was confused;
- suffered from poor insight and judgment;

- • suffered from disorganized thought processes with loose associations, tangientiality,[6] and flight of ideas;

- • reported bizarre delusions and auditory hallucinations;

- • was fixated on acts of physical violence — shooting, stabbing, dead bodies, etc.;

- • had a history of violent, impulsive, and unpredictable behaviors; and

- • had prior criminal charges for, among other things, aggravated sexual assault of a child, assault with bodily injury and injury to an elderly person

After reviewing Dr. Le's testimony and the information she relied upon, as well as the remaining evidence in the record, some of which contradicted Dr. Le's opinion, we hold the lower court could have formed a firm belief or conviction that forcibly medicating S.O. was in his best interest and that he was a danger to himself or others in the hospital. *See J.F.C.*, 96 S.W.3d 266. Accordingly, we hold the evidence was legally and factually sufficient to sustain the lower court's order that S.O. be forcibly medicated. *See id.* We therefore overrule S.O.'s sufficiency challenges.

### *Constitutionally Protected Interest*

In his remaining issues, S.O. contends he has a constitutionally protected liberty interest in avoiding forced medication, and the State failed to demonstrate an important governmental interest sufficient to overcome that interest as required by the Supreme Court's decision in *Sell*. *See* 539 U.S. at 178. We agree an individual has a constitutionally protected liberty interest in avoiding the involuntary administration of antipsychotic drugs. *See Sell*, 539 U.S. at 178; *State ex. rel. D.B.*, 214 S.W.3d 209, 212 (Tex. App.—Tyler 2007, no pet.). However, the Constitution of the United States permits a governmental entity to forcibly medicate a mentally ill defendant who is facing serious criminal charges to render that defendant "competent to stand trial." *Sell*, 539 U.S. at 179.

---

[6] "Tangentiality" is defined as "[a] disturbance in the associative thought process in which one tends to digress readily from one topic under discussion to other topics that arise through association." THE AMERICAN HERITAGE MEDICAL DICTIONARY (2007).

Forced medication for purposes of competency to stand trial may only be ordered if the State proves the recommended treatment is medically appropriate, substantially unlikely to have side effects that may undermine the fairness of the trial, and significantly necessary to further important governmental trial-related interests, considering the availability of less intrusive alternatives. *Id.* In applying these standards, a reviewing court must conclude: (1) important governmental interests are at stake, (2) involuntary medication will significantly further those state interests, (3) involuntary medication is necessary to further those state interests, and (4) administration of the drugs is medically appropriate. *Id.* at 180–81. It is these elements S.O. contends the lower court was required to find and for which there is insufficient evidence.

S.O.'s contention is based on his belief that he was forced to take the recommended medications solely to render him competent to stand trial. Although Dr. Le admitted S.O. was more likely to regain his competency and be able to stand trial if he were medicated, it is clear she believed the treatment she recommended was warranted for a different purpose — because it was in S.O.'s best interest and because he was a danger to himself and others.

In *Sell*, the Supreme Court specifically held that a court need not consider whether to allow forced medication for purposes of rendering the defendant competent to stand trial if forced medication is warranted for a different purpose, such as the defendant's dangerousness or where refusal to take drugs puts the defendant's health at risk. *Id.* at 181–82. In other words when an individual is forcibly medicated for a purpose other than competency to stand trial, we need not turn to the *Sell* standards for forced medication. *See id.* The forced medication order in this case was arguably warranted due to S.O.'s dangerousness and his own best interest. Therefore, the trial court was not required to make conclusions under the *Sell* competency paradigm. Because the sufficiency or insufficiency of the evidence as to the *Sell* competency factors is irrelevant, we overrule S.O.'s remaining issues.

## CONCLUSION

Based on the foregoing, we hold the evidence was legally and factually sufficient for the trial court to find forcible medication is in S.O.'s best interest and he is a danger to himself and others. We further hold that the *Sell* factors relating to a constitutionally protected interest in freedom from forcible medication are inapplicable here as the forced medication was sought not merely to render S.O. competent to stand trial, but warranted due to S.O.'s dangerousness and precarious mental health. Accordingly, we overrule S.O.'s issues and affirm the trial court's judgment.

Marialyn Barnard, Justice